GEORGE GRAY, administrator of RICHARD THOMAS, dec'd,

*vs.*

DANIEL CORBIT and WILLIAM C. SPRUANCE, Trustees, CHARLES E. A. MAILLEY, RICHARD L. MAILLEY, EUGENE C. MAILLEY, CATHERINE EUGENIA MAILLEY, SAMUEL C. THOMAS, CATHERINE F. THOMAS, LOUISA C. THOMAS, EDWARD H. THOMAS, HENRY BUZBY, AMANDA I. BUZBY, WILLIAM DUDLEY and RACHEL W. DUDLEY.

*New Castle, Feb. T. 1872.*

Ordinarily when a trust results to the heir at law, by reason of an ineffectual testamentary disposition, whoever would have taken by descent from the testator, had he died intestate, the land out of which the trust is raised, will be entitled to the resulting interest, and will take it with the like

qualities of transmissibility from the heirs so taking, except only, that in its transmission from the heir upon his death, it will follow that course of succession which attaches to the nature of the interest whether as realty or personalty.

Where a surplus of rents and profits of land is the subject of such a trust, the fund results to the heir as the mere fruit or consequence of his title to the land, which is *pro tanto* treated precisely as if it were intestate; and, however contingent or uncertain the accruing of any surplus as a fact may be, yet, when it accrues, the course of succession is ascertained by going back directly to the death of the ancestor and tracing what would then have been the descent of the real estate whence the fund accrued.

The exact test of the transmissibility of a contingent interest may be taken to be the present capacity of some person, ascertainable, to take the interest in question should the contingency occur upon which it is to vest in possession.

Whether the person to take the possible surplus of rents and profits be one named by the testator or entitled under the law, in the absence of a testamentary disposal, cannot affect the nature of the interest, as to whether it be one transmissible or not.

The common law rule of descent, that if the heir, on whom the inheritance has been cast by descent, die before he has acquired actual seisin or what is equivalent in case of incorporeal hereditaments his ancestor and not himself becomes the person last seised of the inheritance and to whom the claimants must make themselves heirs, does not apply under our intestate law.

The effect of the intestate law is to make all estates and interests inheritable, excluding the necessity of an actual seisin to constitute a new stock.

The interest of deceased heirs of the testator in surplus rent and profits of land, which were held subject to a resulting trust, passes to their executors or administrators as personal estate.

The produce of lands devised to be sold or rented is treated as realty only as a means of effectuating the rights of the heir of the testator, but for all purposes of transmission from him the resulting interest is dealt with according to its actual condition.

The administrator of one of several heirs at law in whose favor a trust results in the surplus of rents and profits of land devised for his maintenance and support during life, is entitled to a share of the surplus although the interest in the surplus could not accrue until the death of his decedent.

Interests in real estate and its produce are held, under the law of descents, to be transmissible through the heir at law, not only where the actual enjoyment of such interest by him is future and contingent, but where the intere  is to vest in possession after his death and therefore can never come into possession.

There is no impediment, either at common law or under the statute of intestacy, to the transmission of the subject matter of a resulting trust through an heir of the testator to whom it cannot accrue in his lifetime.

THIS WAS A BILL IN EQUITY, filed by the complainant as administrator of Richard Thomas, deceased, to obtain a construction of the will of Samuel Thomas, deceased. The case was argued before the Chancellor at the February term, 1871, and the opinion delivered upon the questions which had been discussed, the Chancellor holding that the surplus of rents and profits devised in trust for Richard Thomas' maintenance were subject to a resulting trust to the heirs at law of Samuel Thomas, deceased. The facts in the case and the provisions of the will drawn under consideration by the pleadings were fully reported in connection with the previous argument and opinion of the Court just referred to.*

At the September Term, 1871, the Chancellor heard argument upon the question whether the trust resulting under Samuel Thomas' will, to his heirs at law, of the surplus rents and profits devised in trust for his son Richard's maintenance, was to the persons answering that description at the death of Samuel Thomas, the testator, or their representatives ; or whether to the persons answering that description at the death of Richard Thomas, upon which latter event the surplus accrued.

*Higgins*, for the complainants.

Our claim is that the trust resulted to all the children of Samuel Thomas, including those living and the representatives of those deceased,—of all who survived. It results to them as heirs. In the case of deceased heirs of Samuel Thomas the fund passes from them as personal and not real estate. This is a vested reversionary interest in the heirs of Samuel Thomas, as they stood at his death.

*Ante*, p. 135.

A reversion is a vèsted interest in equity as at law.  Equity follows the law.  2 *Cr. Dig.* 396, *Title* 17 *Reversion Ch.* 1 *Sec.* 1 *and* 2 *and* 13.  This is a reversiony, because it never passed out of the testator, under the will.  4 *Kent Com.* 386—8 ; *Lewin on Trusts* (169); *Fearne on Rem.* 552 ; *Peck vs. Parrot*, 1 *Ves. Sr.*, 236 ; *Gooaright vs. Searle*, 2 *Wil.* 29, which may be cited *contra* is founded on a rule of descent not now in force in this State.

In the next place, assuming that the representatives of Samuel Thomas' heirs, dying before Richard, are entitled, we say that the personal and not the real representatives take the fund.  *Lewin on Trusts* 169; *Levet vs. Needham*, 2 *Vern.* 138.

The surplus vested in the heirs of Samuel Thomas as a chattel, being then a possibility or right, which, when it should result, would pass as a chattel ; and therefore would, even before the contingency, pass as such to the representatives.  One of the heirs of Samuel Thomas, deceased, David Wilson Thomas, by will devised all his residue to his widow and children, one of whom is dead.  The widow and some of these children are not parties.  If the original heirs took, then whether it passes from them as realty or personalty, it would pass by their wills.  There were also other children of Samuel Thomas who made wills.  Then, if there be any doubt on the main question, all ought to be made parties for the protection of the trustees.  As original heirs of Samuel Thomas, these parties took an interest which was devisable.  1 *Fonblanques' Eq.* 219, *Ch.* 4, *Sec.* 2, *and note p* ; *Jones vs. Perry*, 3 *T. R.* 88.

*Rodney* and *Bayard*, for heirs of Samuel Thoams, as at Richard Thomas' death.

This fund is in the nature of a reversionary interest, yet not a reversion.  The rule of the common law is plain that any real estate descends only to one who, at

the time of the descent, is the heir of the person last seized ; *i. e.*, in such a case as this, to one who is heir at the time the trust results. Then has this rule of the common law been changed, as it applies to such an interest as this ? Our statute is confined to descent of lands in fee simple. It is not so broad as in some other States. Taking this as a reversionary interest, does it pass under our statute ? If not, then it does not pass to the original heirs of Samuel Thomas. The interest is in the nature of land, but not a vested interest. Nothing is left by Samuel Thomas' will undisposed of, on its face, up to the day of Richard's death. No surplus existed. There was but a possibility that a surplus might be left. It had no legal existence before. Any reversionary interest must have existed in Richard's lifetime. Washburn defines it as a vested, presently existing interest. The argument *contra* assumes that at Samuel Thomas' death there remained something undisposed of,—then existing,—which passed then to his heirs. But there was nothing,—nothing comprehended by the tenor of our statute. " A naked possibility without "any interest." A bare possibility is not devisable. *Lovelace on Wills* (241) ; *Shepherd's Touchstone* 431 ; *Fearne on Remainders* 539 ; *Roe vs. Jones*, 1 *H. Blk.* 30 ; *Watkins on Conv.* (130) *ch.* 18. In this fund there could be no legal interest before Richard's death, because until then it had no legal existence ; not an interest existent which must be to go to sombody. It then comes into existence as a fruit of the testator's estate, which not disposed of must, of necessity, as part of his estate, pass to those who then stand in his place ; and, because it is the fruit of real estate, pass to his then real and not personal representatives. *Bishop vs. Fountain,* 3 *Levinz* 437 ; *McDonald vs. Brice,* 2 *Keen* 276 ; *Eyre vs. Marsden,* 2 *Ib.* 564 ; *O'Neill vs. Lucas,* 2 *Ib.* 213 ; *Roberts vs. Walker,* 1 *Russ & Myl.* 752 ; *Hill on Trustees* (135) *and note.* The heirs of Samuel Thomas could not have, in their lives a fee in a thing which had no existence at the time of

46—DEL. CH. IV.

their deaths. A possibility cannot be assigned. *Thomas vs. Freeman*, 2 *Vern.* 563.

*Bradford*, for the heirs of Edward Thomas.

If the trust results to the heirs at law, it passes on his death to his personal representatives. *Levet vs. Needham*, 2 *Vern.* 138. The heirs of Samuel Thomas are those who take as his representatives, who may be different persons at different times ; the expression being not necessarily limited to those who are living at his death. They are those who take when the subject-matter descends, as in the case of a reversion. *Goodtitle vs. Searle*, 2 *Wils.* 236. A reversion is that residuum of the estate which does not pass out of him and returns after the expiration of the estate granted, being meanwhile a vested estate, and descending, if he die before it falls in, to his heir as ascertained at that time. This is not strictly a reversion, yet has its nature, in that it is something undisposed and returned, yet differs in that it has no *corpus*, no legal existence, and hence, is the subject of no vested interest. If as a reversion, being a vested interest, it would descend only to the heir at its falling in ; *a fortiori*, it must so pass, being as it is, not vested, but a mere possibility. It is essential to a reversion that it return to the testator and his heirs ; not to him or the administrator of his heirs, another class of persons. Those to whom it returns must at that time represent the testator, and not some one else, as the devisee or administrator of his heir. The doctrine of seisin has no application. On that point our law may differ ; but that does not alter the nature of a reversion, or that course of succession which springs, necessarily, from its nature.

Again, this is treated as real estate, and the heirs of testator are preferred to all others. The policy of the rule is wholly defeated, if the fund may pass to those who are not at all heirs of the testator, as it must in the case of a

deceased heir pass to his personal representatives.  A descent to the immediate heirs before it falls in as realty, which it must do if it descends at all, is inconsistent with its transmission from them as personal estate, which it cannot be until it falls in and is passed from the trustees. It must pass to those under whom at their death it can be taken as personalty.  *Leigh & Dalzlell on Conv.* (119) ; 1 *Fonblanque* 220 ;  *Marks vs. Marks, Prec. in Ch.* 486.

Thus far we have treated this as a reversion. But it is not a reversion, in respect of not being a vested interest. The reasons which govern the case of a reversion apply to this *a fortiori.*  For in such a case the subject-matter had no existence in the lifetime of the deceased heirs. This is a possibility on a possibility ; for (1) *non constat* that there would be a surplus over Richard's necessity,' and (2) *non constat* that, if there were, the trustees might apply the whole.  This is a possibility coupled with an interest.  *Lovelace on. Wills.* (241.)

In all the cases that have been cited there was an estate, a subject-matter, – a *corpus* existing ; and the contingency concerned the person to take it.  Not so here ; there is no *corpus* or subject-matter, until the contingency happens.  A possibility of reverter is not devisable.  *Deas vs. Horry,* 2 *Hill, S. C. Ch.,* 244 ; 4 *Kent,* 511. The English rule—that whatever is descendible is devisable, and *vice versa,* does not hold here ; for here the descent and devisability of lands are governed by statute ; each depends upon the statute applicable to it. The intestate law applies to rights in land in fee simple. This is not such an interest as the law contemplated.

*Higgins,* for the complainant, in reply.

The whole course of argument taken is based on the assumption that this is not a vested interest ;—not a reversion.  But certainly this is essentially a reversionary interest in fee simple ; for, if anything at all, it was some-

thing remaining in Samuel Thomas, that never passed out of him ; for only because it is such is there any resulting trust at all. If a reversion, then as a consequence it was vested. For the proper course of deduction is that because it is a reversion therefore it is vested. We are not to assume first that it is not vested, in order to conclude that it is not a reversion. But at all events if it be a possibility, it is one coupled with an interest, which makes it descendible and devisable. What is a bare possibility is defined by the Court in *Goodtitle vs. Searle*, and is limited to the case of an heir expectant. The uncertainty that the fund may ever exist does not affect the vested character of the right to it, should it come into existence. As to the uncertainty as to who is to take which was relied on by Mr. Bradford to make this a possibility only in Richard's lifetime, the argument is the other way. There was all along certainty as to who were Samuel Thomas' heirs at his death ; but not as to who would be at Richard's death.

After the hearing, THE CHANCELLOR, having held the question under advisement before delivering his opinion, requested further argument upon the question whether the administrator of Richard Thomas was entitled to share in the surplus of rents and profits.

*Higgins*, for Richard Thomas' Administrator.

It may be a question whether, under the conclusion of the Court that Richard took no interest in the rents beyond a maintenance out of it, there was not a resulting trust of the whole fund in Richard's lifetime, subject to his maintenance out of the fund. But, waiving this question, the fact that the fund was to accrue in fact on Richard's death, did not prevent a descent to Richard, as one of the heirs, on Samuel Thomas' death, of this reversionary interest, which, contingent, as to actual interest, was yet a vested right or interest. The contingency of enjoyment

does not affect the vesting of the interest. The *right to the fund* is the estate which descends. *Lewin on Trusts*, 178–79–80–81 ; *Hewitt vs. Wright*, 1 *Bro. C. C.* 86 ; *Jessopp vs. Watson*, 1 *Myl. & K.* 665.

Under our law, though there are many heirs, they all take as one, and from necessity, no one can be excluded. *Wright vs. Wright*, 16 *Ves.*, 188 ; *Smith vs. Claxton* 4 *Madd.* 484 ; *Dickson vs. Dawson*, 2 *Sim. and Stu.* 327.

The principle which bars Richard's representative would, were he the sole heir, carry the trust over to collateral kindred of Samuel Thomas, contrary to the Statute of descent.

The question does not rest on the law of descent, but the trust is a creature of a court of equity, and it is this Court, and not the law of descent which carries it to the heir.

*E. G. Bradford, Jr.*,* for the children of Samuel C. and Edward H. Thomas, *eontra.*

The conclusion has been reached that the accumulation of rents, issues and profits in the hands of the trustees, which arose during the lifetime of Richard Thomas from the moiety of the lands of Samuel Thomas, deceased, held in trust for the maintenance of Richard, is a resulting trust to the immediate heirs of Samuel Thomas. Is the administrator of Richard Thomas entitled in his representative capacity, to receive an original share of this fund ? The solution of this question gives rise to another inquiry ; viz. : whether Richard Thomas was an immediate heir of Samuel Thomas for the purpose, and in relation to, the disposition now of this fund by the trustees ? As a resulting trust, impressed with the character of realty,

---

* Mr. E. G. Bradford Sr., had retired from the case after the argument just preceding this one on account of his appointment as United States District Judge.

this fund goes to the immediate heirs, as heirs, and, so far only as they are heirs. Heirship alone points and directs the resulting of this trust. Accurately, the word heir is not an absolute, but purely a relative term, and has relation only to the law of descent. " An heir is he upon " whom the law casts the estate immediately on the death " of the ancestor." 2 *Blackst. Com.* 201. Descent, also is not an absolute, but merely a relative term "Descent " is the title whereby a person, on the death of his ancestor, " acquires his estate by right of representation as his heir." 4 *Kent. Com.* 374.

If there be nothing to descend—no subject-matter of descent there can be no descent, and the law of descent must be absolutely inoperative. All heirs belong to either one or the other of two classes ; first, heirs in name or by description under the law of descent. Secondly, heirs in substance and in fact—beneficial heirs, under, not only the law of descent, but also the operation of that law. The law of descent based alike on natural affection and considerations of social order prescribes the requirements and degrees of relationship to the ancestors under which individuals may be his heirs ; and all such individuals are commonly called heirs, but without descent, under the the law of descent, can such individuals be any more than heirs of the ancestor in name ? A man seized of land may die leaving children and also a will devising his land to strangers ; while his children would commonly be called heirs, it is obvious that they are such only in name or by description and not in fact. They may be called his heirs merely because they come within the degrees of relationship regarded by the law of descent without respect to the possibility of the operation of that law in their favor in the given case.

Such heirship is not of the kind which will satisfy this Court for the purpose of the present case.

The second class of heirs are those in substance and

in fact, under, not only the law of descent, but also the operation of that law. This heirship presupposes and requires a descent under the law, and such descent presupposes and requires something to descend, or a subject-matter of such descent. That subject-matter may consist, either of interests, accompanied by present enjoyment or possession, or of interests, the possession or enjoyment of which is future or uncertain, or of possibilities, coupled with an interest; and it must fall within either one or more of these classes. Hence, heirs in substance and in fact are those in whose favor the law of descent operates by the descent to them, from their ancestors, of the subject-matter of descent, whether the same rests in possession, expectancy or possibility; and they are heirs because of their relation to that subject-matter. They are only those individuals who, while in existence, are necessary to the due operation of the law of descent, in so far as that law can operate in a given case and under existing circumstances.

If the due operation of the law of descent in the given case, does not require any particular individual as the object of the descent, that individual is not an heir in relation to the subject-matter of such descent. A given individual, in a case of reversionary interests in lands, and other interests in lands to be enjoyed in future, which by no possibility he could ever enjoy himself, may, nevertheless, if these interests be transmissible through him under the law of descent, be required by the operation of that law, as a channel through which the title to such interests may be conveyed to and vested in the ulterior heirs of the ancestor, who must take title, if at all, through the given individual, as heir of the ancestor for the purpose of their enjoyment. Under the law of descent of such interests, when the time for their enjoyment has arrived, and in such case, the given individual is heir of the ancestor with respect to such interest for the reason

alone· that the inheritance would be defeated if he were not an heir. The operation of the law of descent requires his heirship. But if a given individual, in whose favor the law of descent would have operated to make him an heir in substance and in fact, in relation to his ancestor's property, if his ancestor had died intestate as to that property, should, by reason of a valid devise by his ancestor, not have the possibility of enjoying a future or contingent interest in such property, and if such interest should not be transmissible through him under the law of descent to the ulterior heirs of the ancestor, such individual could not be heir as to such future or contingent interest. As he is perfectly useless for the purposes of descent in the given case, and as the operation of the law of descent under the given circumstances could not affect either him or any one through him as heir, and as he could·be heir only through the operation of the law of descent, and such law could never operate in his favor, he cannot be an heir with respect to such interest. Applying the above law to this case, Richard Thomas is not an heir with respect to the accumulated rents, issues and profits. The will of Samuel Thomas is admittedly valid, and in view of that will, Richard Thomas had no possibility of enjoying the fund in question until his death, *non constat*, what the fund would be, nor could Richard 'Thomas serve as a channel of heirship with respect· to this fund. For as a resulting trust, it was impressed with the character of realty during the first transmission only, *Leigh & Dalzell on Conversion* (119) ; and the Court has already indicated that such first transmission was to the immediate heirs of Samuel Thomas. After such transmission, the fund assumed its true character of personalty, and is not descendible. Therefore, the law of descent could not operate with respect to this fund, either in Richard Thomas or through him ; and he could not be heir and, consequently, his administrator is not entitled to claim any portion of it.

*G. B. Rodney*, for the defendant, Catherine E. Mailly, on the same side.

Richard took a freehold in the rents during his lifetime ; and under the views expressed by the Chancellor,— the reversionary interest in the surplus—was there not a merger ? *Crabbe on Real Prop.*, *Sec.* 2477.

*Higgins*, replied.

THE CHANCELLOR :—

The Court having, upon the general hearing of the cause, concluded that there is a resulting trust to the heirs-at-law of Samuel Thomas, the testator, of the surplus rents accumulated at Richard Thomas' death, from the moiety of the real estate devised for his benefit, the object of the present argument has been to ascertain among whom, under such resulting trust, the fund is now distributable.

Three questions have been discussed :—

I. Whether the trust resulted to the immediate heirs-at-law of Samuel Thomas, passing to them at his decease, an interest transmissible upon the death of any of them, during Richard's lifetime, to their representatives, or, whether the trust results only to those who, at Richard's death, the event upon which the fund accrued, could entitle themselves as heirs-at-law of Samuel Thomas, the testator. This question becomes material, because several of the heirs of the testator died in Richard's lifetime, some of them intestate and others leaving wills.

It is, of course, not questioned that, ordinarily, real estate or its produce, ineffectually disposed of by will, results to the immediate heirs-at-law of the testator, carrying to them an interest which, upon the death of any one of the heirs, before the fund comes into possession, is transmissible from such heir. The principle is, that, under

47—DEL. CH. IV.

a resulting trust, the heirs-at-law take by virtue of their right of inheritance in the land to which the trust relates, it being considered as, *pro tanto*, not devised, and the resulting fund being, for all the purposes of its transmission from the testator, treated precisely as the land itself. So strictly do the heirs thus take by the right of inheritance, that their title is wholly irrespective of any question of intention on the part of the testator to prefer them. *Hopkins vs. Hopkins, Cas. temp. Talbot*, 44; *Amphlett vs. Parke*, 2 *R. & M.* 221; *Tregonwell vs. Sydenham*, 3 *Dow. P. C.* 194. Nay, the heirs will take under a resulting trust even against express words of exclusion in the will unless there be also an effectual testamentary disposal of the fund; for the heir cannot be disinherited by mere intention, but only by an effectual devise away from him. Lord Hardwicke in *Sibley vs. Cook*, 3 *Atk.* 572; *Fitch vs. Weber*, 6 *Hare*, 145.

It must follow, from these principles, that, ordinarily, whoever would have taken by descent from the testator, had he died intestate, the land out of which the trust is raised, will be entitled to the resulting interest, and will take it with the like qualities of transmissibility from the heirs so taking, except only, that, in its transmission from the heir upon his death, it will follow that course of succession which attaches to the nature of the interest, whether as realty or personalty.

But the position taken is, that the present case is exceptional; that this surplus resulted, not to the heirs-at-law of Samuel Thomas, who were such at his decease, but only to those who could entitle themselves in that character at the decease of Richard Thomas, the event upon which the existence of the surplus became a fact, ascertained and fixed. This position rests upon two grounds.

First, that prior to Richard's death, there was but a *naked possibility*, as it is termed, in this surplus, not

coupled with such a legal interest such as could be, at that time, transmissible.

There are two answers to this objection to the transmissibility of the surplus fund before Richard's death.

One answer, and a true one, is that, according to the theory of resulting trusts before stated, the fund results to the heir as the mere fruit or consequence of his title to the land, which is *pro tanto* treated precisely as if it were intestate ; however contingent or uncertain the accruing of any surplus, as a fact, may be, yet, in the event of its accruing, we ascertain its course of succession by going back to the death of the testator, and consider the case as if there had then occurred a descent directly from him of the real estate when the fund accrued, and, as the title to the land would be, so we fix the succession to the fund. It matters not, therefore, how contingent or remote the actual existence of any undisposed-of fruit of real estate, since the right to it is ascertained by reference to a supposed title by descent of the land direct and certain, attended with all the consequences of a descent, and therefore transmissible immediately and without awaiting the actual existence of the fund.

But laying aside this technical view of a resulting trust, as following the course of an immediate descent, and treating the question upon general principles, it is still true that a future interest, be it ever so remote, will, if the person who is to take it in the event of its accruing die before that event happen, be transmissible to his representatives by descent, devise or assignment. The only limitation to be put upon this statement is, that the contingency must be one which affects, not the person who is to take, but only the event upon which the interest is to vest. Whenever there is a person *in esse* and ascertainable capable of taking an interest contingent upon some uncertain event, should that event now happen, then the interest is transmissible before the event happens.

It is only where the contingency affects the person to take, so that he cannot be ascertained until the contingency happens, that there is no transmissible interest ; as where an executory devise is limited to the right heirs of J. S. who is living ; or where a remainder after an estate for life is limited to whichever one of two persons may survive the estate for life, as in *Doe vs. Tomkinson*, 2 *M. & S.* 165, cited in argument. This distinction is very fully put it *Fearne on Cont. Rem. Ch. VI. Sec.* 4 and 6, particularly in the closing paragraph of Sec. 6. The exact test then of the transmissibility of a contingent interest may be taken to be the present capacity of some person, ascertained or ascertainable, to take the interest in question, should the contingency occur, upon which it is to vest in possession.

Contingent rights and interests were very early held to be descendible. A strong example on this point is afforded by the case of *Marks vs. Marks, Prec. in Ch.* 486; also reported in 1 *Strange*, 129, where, upon a devise of a remainder after a life estate to A, upon condition that he should, within one month after the testator's death, pay into his estate £500. A. died in the lifetime of the tenant for life without having paid the money. Nevertheless, the right to pay it and take the estate, was held to have descended to his heir. The inheritability of contingent interests and possibilities of every nature is fully discussed and very liberally conceded in that case by Sir Joseph Jekyll, M. R., and Lord Chancellor Parker, sitting together. The devisability of contingent and executory interests was, at one time, questioned ; but not since the decision of *Jones vs. Roe*, in which all the prior cases were reviewed. Chancellor Kent speaks of the doctrine of that case as generally adopted in this country, 4 *Kent* (511). *Jones vs. Roe* came first before the Common Pleas, 1 *H. Blk.* 30, and then on writ of error before the King's Bench, 3 *T. R.* 88, where the subject was elaborately considered and put at rest. See also *Fearne on Cont. Rem.*

*Ch. VI. Sec. 6.* It is hardly necessary to add that our Statute of Wills is as comprehensive as was the Statute of Henry VIII, upon which the English decisions proceeded ; and that it has always been considered as subject to the rules of construction adjudged in the English courts.

We may now proceed to apply these principles to the present case. Whether this, or any surplus of rents and profits of the real estate devised to Richard's use would ever exist, was at the testator's death uncertain, being contingent upon the question whether, at his death, there should have accrued from the rents and profits, more than the amount applied to his maintenance. But it is not true that, because the surplus might never in fact arise, it had, prior to Richard's death, no legal existence, *i. e.,* as the subject of legal right or interest. It was not, as was argued, a bare or naked possibility not coupled with an interest, like the expectation of an heir in the ancestor's lifetime who has not even the shadow of legal right, since the law does not then know him as heir, no more than any stranger, the maxim being *nemo est haeris viventis.* And this, by the way, is in fact, the only example of a naked possibility found in the books. The present surplus did not spring from mere accident, but directly from the provisions of the will, *i. e.,* from the limitation which, it has been adjudged, was put upon Richard's interest in the rents and profits. The contingency of such a surplus, whether actually contemplated or not, enters into the scheme of the will; and, however uncertain the fact of its ever accruing, the right to take it, should it accrue, might be a present subsisting interest before Richard's death ; provided there were then a person ascertained and capable to take. Not a question on this point could have been raised, had the testator himself limited this contingent interest to a devisee. Yet, whether the person to take it be one named by the testator or entitled under the law,

in the absence of a testamentary disposal, cannot affect the nature of the interest as to whether it be one transmissible or not.   Either way, it is plainly within the principle that, where there is a person presently capable of taking, and only the event upon which the interest is to arise or vest is contingent, then the interest is transmissible.   I am unable to distinguish this case from that of any ordinary contingent remainder, limited to arise upon some uncertain determination of the particular estate ; or from an executory. devise in fee, to take effect upon some contingency determining a prior estate in fee, as upon the death of the first tenant in fee, without issue living at his death.   In these cases the contingent remainder and executory devise, prior to the contingency upon which they are limited, exist as legal interests, so as to be transmissible in no conceivable sense such as applies to this surplus.

They are contingent interests provided for by the will ; so is this surplus.   None the less so, because, instead of being expressly limited, as such interests ordinarily are, it arises by construction of this will.   In the case of contingent remainders and executory devises, limited upon contingent events, there is a person presently capable of taking should the contingency, upon which the interest is to arise, happen.   So here, with the wholly immaterial difference that the persons to take, instead of being named in the will, are ascertained by the law of descent.

The other objection to the transmissibility of the interests of those of the heirs of Samuel Thomas, who died in Richard's lifetime, was founded upon the common law doctrine, that if the heir on whom the inheritance has been cast by descent die before he has acquired actual seisin, or what is equivalent in case of incorporeal hereditaments, his ancestor, and not himself, becomes the person last seised of the inheritance, and to whom the claimants must make themselves heirs, upon the maxim *non jus sed*

*seisina facit stipitem,* 4 *Kent* (386.) The effect of this rule was, to make all remainders and reversions expectant upon a particular estate of freehold, ultimately inheritable in possession only by the person who, at the determination of the particular estate, could make himself heir of the original donor, who was seised in fee and created the particular estate ; or, if it were an estate acquired by purchase, the heir of him who was the first purchaser of such remainder or reversion ; unless, indeed, the mesne heir should, as he might do, by acts equivalent to an actual seisin, have changed the course of descent and made himself a new stock ; as by a grant, devise or charge upon it, or by its being taken in execution. *Cook vs. Hammond,* 4 *Mason,* 485.

In the present case, the resulting trust being treated as an interest in real estate, and being in its nature a reversion, would, if subject to this common law rule of descent, pass at Richard's death, only to those who could then claim as heirs of Samuel Thomas, the person last seised. A question might be made as to the effect of wills made by some of the deceased heirs; whether or not, such wills so operated under the qualification of the general rule as to alter the descent. It is at least doubtful, whether anything short of a devise of the specific interest in question could have that effect. But that question is not material. For my conclusion is, that this common law rule of descent does not apply under our intestate law, the effect of which is to make all estates and interests inheritable, excluding the necessity of an actual seisin to constitute a new stock. This construction has been given in other states to statutes of descents, and where the statutory provisions are in terms less comprehensive than our own. *Cook, vs. Hammond,* 4 *Mason,* 467, contains an elaborate examination of the Massachusetts statute on this point, and is followed by *Miller, vs. Miller* 10 *Metc.* 393. The provision of that statute was, that "when any

"person shall *die seised* of any lands, tenements or "hereditaments, *or of any right thereto or entitled to any* "*interest therein* in fee simple &c., the same shall descend "&c." 4 *Mason*, 488. The like construction has been given to the Connecticut statute of descents, *Hill-house vs. Chester*, 3 *Day*, 166; also in South Carolina, 1 *Hill S. C. Ch.* 269. And in most of the States the common law rule is held to be altered by such statutory construction, 4 *Kent* (388.) Our statute runs thus ; "when "any person, having title or right, legal or equitable, to "any lands, tenements or hereditaments in fee simple, "shall die intestate as to the same, such lands, tenements "or hereditaments shall descend &c." *Rev. Code* 277. It omits the term "seised," which, in the Massachusetts statute, afforded the main argument for retaining the common law rule.

Both the objections taken to the transmissibility of the interests of the deceased heirs of Samuel Thomas, were taken in like manner in *Kean's lessee vs. Roe & Hoffecker*, 2 *Harring.* 103. That was the case of an executory devise under the will of Thomas J. Macomb, deceased, to Mrs. McKean, expectant upon the death of her brother, James B. Macomb, without issue, living at his death. Mrs. McKean died in her brother's lifetime, leaving, as her heirs at law, two children who also both died before the executory devise vested by the death of James B. Macomb.

The question arose, whether the father of the children inherited the executory devise under them ; and it was so decided, the Court holding both that all contingent interests and possibilities, coupled with an interest, were transmissible to the representatives of the devisee, if he die before the contingency happens. They take the distinction before stated, between contingencies, affecting the certainty of the person to take, and those which are only in the event upon which the interest limited is to vest. The other objection founded upon the common law

rule, was very fully argued and and considered upon our statute, and the Court held that our intestate law was intended to supersede wholly the English rules of descent, and to establish a new and distinct system, differing from the English in all its main features, and, among other points of difference, reversing the common law maxim which renders seisin necessary to make a stock of descent. The case arose under our old intestate law of 1829; but there is no material difference between that and the revision of 1852 now in force.

The second question discussed was, whether the interests of the deceased heirs at law of Samuel Thomas, deceased, have passed from them to their heirs or devisees as real estate, or to their executors or administrators as personal estate. The authorities decisively settle the latter as the course of descent. The undisposed-of produce of land devised to be sold or rented, is treated as realty only as a means of effectuating the rights of the heir of the testator ; but for all the purposes of transmission from him, the resulting interest is dealt with according to its actual condition ; and therefore, if it be " of a chattel nature, as a " term for years or a sum of money, it will, on the death " of the heir, devolve on his personal representative," *Lewin on Trusts* (177) *Part* I *Ch. VIII. Sec.* I ; *Leigh &amp; Dalzell on Conversion* (137),*Ch. VI.* I find these writers supported by the cases cited. *Levet vs. Needham,* 2 *Vern.* 138 ; *Wych vs. Parkington,* 3 *B. P. C.* 44; *Hewitt vs. Wright, Bro. C. C.* (86) ; *Smith vs. Claxton,* 4 *Madd.* (484) ; *Sewell vs. Denny,* 10 *Beav.* 315 ; *Barratt vs. Buck,* 12 *Jur.* 771. It makes no difference, as was suggested, that the heir of the testator dies before the resulting interest realized in money. That point was made in *Sewell vs. Denney,* where the resulting trust to an heiress was of a term for years in lands which was unexpired at her death. It was insisted that, although the rents accruing from the term in her lifetime passed to

48—DEL. CH. IV.

her administrator, the future rents, as they came to her in the character of realty, would so descend to her heir. But the Court adjudged the rents of the entire term to the administrator.

The last point discussed was, whether, supposing the trust to have resulted to the immediate heirs-at-law of Samuel Thomas, deceased, the administrator of Richard Thomas is entitled to a share of the fund under him, as one of those heirs, his death being the event upon which the surplus was to accrue, if at all, so that he by no possibility, could himself take an interest in it.

I am of opinion that Richard's administrator is entitled to a share. This seems to be a necessary consequence of the peculiar doctrine of resulting trusts, as before stated. A resulting trust of the undisposed-of produce of real estate, presupposes a descent *pro tanto* of the real estate itself as the ground of title to the fund ; so that, in order to ascertain who is to take the fund, we are to look for the person who, at the testator's decease, had he died intestate, would have taken, as his heir-at-law, the land from which the fund has accrued ; or if the heir be dead, his representative is entitled. This surplus accrued from land which, had it been intestate, would unquestionably have descended in part to Richard, as one of the heirs ; and to the extent of this surplus, and for the purpose of fixing the title to it, the case is to be treated under the doctrine of resulting trusts, as if the land were in fact intestate, so as to have descended to Richard with the other heirs. Then the question arises, does the fact that the fund was necessarily to accrue after Richard's death, so that he could himself by no possibility ever take an interest in possession, create any legal impediment to the transmission of such an interest through him to his representatives. Upon authority it seems not. Interests in real estate and its produce are held, under the law of descents, to be transmissible through the heir-at-law, not

only where the actual enjoyment of such interest by him is future and contingent, but where the interest is to vest in possession after his death, and therefore, can never come to his possession. The distinction is taken between the inheritance in the land, and the actual possession of it or of its produce. The former may, in legal contemplation, be in him to whom the latter can never come. The distinction is very technical, but well established and clear. An early and most authoritive illustration may be found in *Coke on Littleton*, 2 *Co. Ins.* 378 *b., note on Sec.* 721. In treating of the cases in which a warranty of land will run to the heirs of the grantee, he puts this case :—

"And so it is if land be given to A. and B. so long as " they joyntly together live, the remainder to the right " heirs *of him that dieth first,* and warrant the land in *for-* " *ma praedicta* ; A. dieth ; his heire shall have the war- " rantie ; and yet the remainder vested not during the life " of A, for the death of *A. must precede the remainder* " and yet shall the heire of A. *have the land by descent.*" Now here, the effect of the rule in Shelly's case would be to convert the remainder, limited in terms to A's heirs, into an inheritance in A., to be taken by descent from him, unless the fact that the remainder could, by no possibility, vest in A.'s lifetime, rendered him incapable of taking and transmitting the inheritance. Yet Lord Coke, while he ·expressly notes the fact that the death of A. must precede the remainder, holds that the heir takes the estate, not as a remainder, but by descent of the inheritance from A. ; thus giving the rule in Shelly's case its full application. In *Marks vs. Marks,* before referred to, 1 *Strange,* 132, Sir Joseph Jekyll cites this passage from Coke to the general proposition, that " even a possibility " may go to the heir which never could vest in the ances- " tor." This statement by an eminent and able judge, may be taken as shewing what was then understood (5 *Geo.* 11.) to be the scope and meaning of Lord Coke's

dictum.  Two modern cases have been cited in which the
same principle has been applied to resulting trusts.   In
*Wright vs. Wright*, 16 *Ves.* 188, a testator directed the
conversion of his real estate by trustees for the payment
of his debts ; also of his personal estate.   After charging
the mixed fund with an annuity to his wife, he directed
the whole to be sold for his daughter and any other child-
ren he might leave, to be paid over at twenty-one years
of age or marriage ; but if he should have no other child,
and his daughter sould die under age and unmarried, then
the fund to be subject to his wife's use of the income
during her life, and at her death the principal to pass *as
he should by codicil direct*.   The daughter was the testa-
tor's only surviving child, and she died under age unmar-
ried.   The testator left no codicil ; so that the principal
of the mixed fund, subject to the widow's use of the in-
come, became undisposed of by the will.   The direct
question raised in the case was, whether the conversion
of the real estate was absolute or qualified ; whether,
therefore, the whole fund resulted as personal estate to
the next of kin of the testator, or the proceeds of the real
estate resulted as land to his heirs.   But either way, it
was treated as settled that an interest in the fund, as the
subject matter of a resulting trust, was transmissible
through the daughter, although it could, by no possibility,
come to her in possession, either as of next of kin or heir
of her father, since it was only in the event of her death
under age and without issue, that the fund was to become
undisposed of and so pass as intestate to the testator's
representatives.   Sir William Grant says, " It is not ne-
" cessary in this case to determine whether the conver-
"sion be absolute or qualified ; because in the events that
" have happened the result with respect to the rights of
" the parties will be the same.   In the one way the mother
" and daughter would take it as personal property, distrib-
"utable as upon an intestacy with respect to the capital;
" and the mother, as administratrix to her daughter, would

"now be entitled to her share ; *in the other, the daughter* "*would as heir at law*, take it by way of resulting trust upon " a failure of the object for which the conversion was made ; "but according to Lord Thurlow's doctrine, referred to in " the argument, it would be personal estate in her, and the " mother, as her administratrix, would in that way also be "now entitled to the whole." *Jessopp vs. Watson*, 1 *Myl. & K.* 665, is a case under precisely the same circumstances, in which there was a resulting trust of a residue composed of proceeds of real, and also of personal estate, which could arise only after the death of the testator's heir, an only daughter, to whom the estate was limited in the event of her attaining full age or marriage. Sir John Leech M. R., held that so much of the residue as was constituted by the proceeds of the real estate, descended to the daughter as her heir at law, and was transmissible from her in the character of personal estate.

If, at common law, there is no impediment to the transmission of the subject-matter of a resulting trust, through an heir of the testator, to whom it cannot accrue in his lifetime, no such impediment will be found in our statute of descents. For it is the policy of our statute to enlarge, to the utmost limit, the descendibility of interests in real estate ; and it may be safely assumed, that any right or interest in, or springing out of, land which was transmissible to the heir at common law, may be taken by him under the statute.

I conclude, therefore, upon the whole case, that the surplus rents and profits which, at Richard's death, had accrued from the real estate held in trust for his benefit during his lifetime, is distributable among all the heirs at law of Samuel Thomas, deceased, as ascertained upon his death, including in the distribution, the executors or administrators of such of the heirs as died in Richard's lifetime, and including, also, the administration of Richard himself.