MARY P. HUXLEY, MARY P. HUXLEY, Executrix under the Will of Rebecca P. Hall, deceased, MORRIS A. STOUT, JR., and REBA S. SNYDER,

*vs.*

SECURITY TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Will of John Peoples, deceased, MORRIS A. STOUT, SR., ARTHUR T. HALL, and GEORGE LODGE, VAUGHAN CLAVEY and EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executors under the Will of Alfred D. Peoples, deceased, and THOMAS RALPH CLARK, administrator, *d.b.n. c.t.a.* of Sarah M. Peoples, deceased.

*New Castle, August 27, 1943.*

*W. Reese Hitchens,* of the firm of Hering, Morris & Hitchens, for Mary P. Huxley, Mary P. Huxley, Executrix of Rebecca P. Hall, and Virginia W. Stout, Administratrix of M. Albert Stout, Jr., (sometimes known as Morris A. Stout, Jr.)

Reba S. Snyder, the remaining complainant, was not present at the hearing, and was not represented by counsel.

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for Security Trust Company, Trustee.

*Warren Roberts,* for Morris A. Stout, Sr.

*William H. Foulk,* for Arthur T. Hall.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for Vaughan Clavey and Equitable Trust Company, surviving executors under the will of Alfred D. Peoples, deceased.

*William S. Potter,* of the firm of Southerland, Berl & Potter, for Thomas Ralph Clark, Administrator *d.b.n. c.t.a.* of Sarah M. Peoples, deceased.

HARRINGTON, Chancellor: The complainants seek to compel Security Trust Company, the trustee under the will of John Peoples, deceased, to distribute the balance of the principal and the income thereon, remaining in its hands, to the heirs at law and next of kin of the deceased.

John Peoples died a resident of the City of Wilmington March 28th, 1892, leaving a last will and testament, which was duly probated before the Register of Wills, in and for New Castle County, on April 4th, 1892. He left to survive him his widow, Sarah M. Peoples, who died August 23rd, 1915, and five children, William H. Peoples, who died May 19th, 1892, Sarah P. Stout, who died July 10th, 1906, John H. Peoples, who died February 12th, 1914, Alfred D. Peoples, who died June 2nd, 1939, and Rebecca P. Hall, who died March 19th, 1940.

The will of the testator, among other things, provided:

"Second. Should my beloved wife, Sarah M. Peoples, be living at my decease, I direct my executors to assign and transfer to 'The Security Trust and Safe Deposit Company', of the City of Wilmington, a corporation of the State of Delaware, its successors and assigns, fifty shares of the capital stock of 'The Frankford and Southwork Passenger Railway Company of Philadelphia', and fifty shares of the capital stock of 'The Central National Bank of the City of Wilmington, Delaware,' in trust to pay the interest and income therefrom to my said wife during her life, as it may be received, and at her decease to divide the principal equally among my then surviving sons and daughters and the issue of any then deceased by right of representation.

"The foregoing provision is in lieu and bar of dower and any and all claims my wife may have against my estate and in liberal fulfilment of the antenuptial contract made between her and myself dated April 20th, 1886. * * *"

"Eighth. All the residue of my estate to which in any manner I may be entitled at the time of my decease, including any of the foregoing legacies that may lapse, or fail from any cause to be carried into effect, I direct my executors to assign, transfer and convey absolutely and in fee simple to the said 'Security Trust and Safe Deposit Company', in trust, to pay the interest and income thereon annually, for the term of ten years from my decease, to my sons and daughters then surviving and the issue of any then deceased, equally by right of representation. At the end of the said term of ten years, to assign, transfer and convey to my then surviving sons and the issue of any deceased son their equal share by right of representation, of the whole of said residue with any accumulated interest, absolutely and in fee simple, and to continue to pay to any daughter then surviving and to my daughter-in-law, Mary Jane Peoples, if then surviving, the interest

on their shares respectively of the said residue annually, during their lives. In case of the death of any of my daughters, to assign, transfer and convey the share in said residue of the one so dying to her husband if living, if the husband be not alive, then to her children and the issue of any deceased child equally by right of representation, absolutely and in fee simple. * * *

"Ninth. I hereby authorize my executors, or the survivor of them, or the person having the execution of this will, also the said 'Security Trust and Safe Deposit Company', to sell at public or private sale, assign, transfer and convey absolutely and in fee simple or otherwise, any and all of my real and personal estate, in their discretion in the execution of this will, without liability on the part of the purchasers, as to the application of the purchase money. My said executors shall in no case be liable for that part of my estate which they may assign, transfer and convey to said 'Security Trust and Safe Deposit Company' after such transfer or conveyance."

On May 28th, 1892, Sarah M. Peoples, the widow of the deceased, appeared in the Orphans' Court for New Castle County, waived her right of dower in his real estate, and elected to accept the bequest to her under his will. The annual income on the trust fund created for her benefit in that instrument, was paid to her during the remainder of her life. The residue of the testator's personal property amounted to $28,773.62, and on May 4th, 1894, was transferred and assigned by his executors to the trustee.

On the same date, the executors of the deceased conveyed his real estate to the trustee; it consisted of five parcels in New Castle County, the greater part of which was located in the City of Wilmington. It is agreed that its aggregate value at the death of the testator and at the time it was so conveyed was $69,100. It is further agreed that since that time there has been no substantial change in its value. Pursuant to the authority given by the will, the trustee sold all of that property at various times between February 27th, 1902, and February 2nd, 1914, and realized $69,100 therefrom. The testator provided that if any of his daughters should die without leaving a husband to survive her, his trustee should "assign, transfer and convey" her share of

the residue of his estate "to her children and the issue of any deceased child equally by right of representation, absolutely and in fee simple." Rebecca P. Hall, one of his daughters, recently died without leaving a husband to survive her and without lineal descendants. All of the funds in the hands of the trustees have been distributed except the one-fifth share on which she had been receiving the income during her life. The principal of that sum, including her share of the proceeds of the real estate, is $15,433.43, but the trustee also has in hand $272.98, which is unexpended income on the fund so held for Rebecca P. Hall's benefit.

It is not seriously denied that all of this is intestate property, belonging to the estate of John Peoples, deceased, or that primarily his heirs and next of kin are determinable as of the date of his death. *Ford v. Wilson*, 10 *Del.Ch.* 124, 85 *A.* 1073; 4 *Page on Wills*, (*L.T.Ed.*) 163.

On July 2nd, 1898, or some six years after the death of the testator, Rebecca P. Hall legally adopted a son, known as Arthur T. Hall, but he is not her child within the meaning of the testator's will, and is not entitled to the fund in controversy, though he survived her. In principle, that question is determined by *Hall v. Crandall*, 25 *Del.Ch.* 339, 20 *A.2d* 545. "A gift to a child of one, other than the testator, *prima facie* means his own child and not an adopted child." 1 *Page on Wills* § 900; see, also, *Parker v. Carpenter*, 77 *N.H.* 453, 92 *A.* 955; *Restat. Law of Property*, § 287.

Letters of administration *d.b.n.c.t.a.* on the estate of Sarah M. Peoples, widow of the testator, were granted to Thomas Ralph Clark March 23rd, 1942, and the original bill was amended, and he was made a party defendant in order that his rights might be determined.

Following the bequest for the widow's benefit, the testator provided:

"The foregoing provision is in lieu and bar of dower and any and all claim my wife may have against my estate and in liberal fulfilment of the antenuptial contract made between her and myself dated April 20, 1886."

Sarah M. Peoples accepted that gift, enjoyed its benefits until her death, and no fraud or concealment is alleged. Primarily, she was entitled to share in her husband's intestate personal property, under the statute of distributions in force at the time of his death. § 32, *Chapt. 89, Rev. Code of 1852, as amended in* 1874. She was likewise entitled to dower in his real estate. *Chapt. 85, § 1 Rev. Code of 1852, as amended in* 1874. Both of these sections and chapters appear in the *Revised Code of 1852 as amended in* 1893. Moreover, no mere negative words of exclusion in the testator's will could take away any of these statutory rights without some action on the part of his widow (*Nagle v. Conard,* 79 *N.J.Eq.* 124, 81 *A.* 841 ; 2 *Page on Wills,* (*L.T.Ed.*) 857) ; but he could, and did, put her in the position where she was compelled to elect whether to retain them, or whether to take the benefits given her by that instrument. She could not fairly and equitably take both. The testator's language was broad and comprehensive, and cannot be disregarded. *Chamberlain v. Chamberlain,* 43 *N.Y.* 424; *Matter of Benson,* 96 *N.Y.* 499, 48 *Am.Rep.* 646.

He intended to impose a condition for the benefit of his "estate". The gift to his wife was "in lieu and bar of dower and any and all claim" she "may have against my estate." The fair inference is that the word "claim" meant as his widow. Its use with the word "dower" seems to require that construction. *Winkler v. Woodruff,* 21 *Del.Ch.* 147, 182 *A.* 409. Moreover, the intended, general, conditional scope of the gift is emphasized by the explanatory phrase "and in liberal fulfillment of the antenuptial contract made between her and myself dated April 20, 1886". Such a contract, making some provision for a wife, in lieu and bar of dower or other statutory interest in her husband's estate, is for its general benefit on his death. *Pickering v. Stamford* (30 *Eng. Repr.* 1038, *aff'd* 30 *Eng. Repr.* 1121) recognizes that. While the precise provisions of the contract referred to are not in the record, that is unimportant; the testator's reference to it is

the important fact. As Sarah M. Peoples accepted the conditional gift in the will, and waived her statutory rights in her husband's property, her administrator *d.b.n.c.t.a.* has no rights in the fund in controversy. *Chamberlain v. Chamberlain, supra; In re Benson, supra; In re Hills' Will,* 264 *N.Y.* 349, 191 *N.E.* 12, 93 *A.L.R.* 1380, 1384; *Ellis v. Dumond,* 259 *Ill.* 483, 102 *N.E.* 801.

In England, a distinction has been drawn between an intestacy resulting from the failure of some provision of the will to take effect, and an intestacy resulting from the failure of the testator to fully dispose of some portion of his property. 10 *Halsbury's Laws of Eng.,* (2d *Ed.*) 582; 2 *Pomeroy's Eq. Jur.,* (5th *Ed.*) § 496 *a, note;* 93 *A.L.R.* 1387. The leading cases establishing these principles are *Pickering v. Stamford, supra,* and *Lett v. Randall,* 65 *English Reprint* 572. In the former, a testamentary provision for the widow, in lieu of dower or other interest in her husband's estate, though accepted by her, was regarded as being for the real benefit of the other devisees or legatees, and she took her share of the intestate personal property under the statute of distributions. In *Lett v. Randall* the court held that the rule was not applicable to its facts; but even under the same facts, *Pickering v. Stamford* has been seldom followed by the modern cases in this country. 93 *A.L.R.* 1387; 2 *Pomeroy's Eq. Jur.,* (5th *Ed.*) § 496 *a, note.* Moreover, even if the English law were applied, *Lett v. Randall* would be controlling, as the intestacy was caused by the failure to absolutely dispose of the property. In that case, the court aptly said:

"But if by Will certain terms, or a certain condition, be annexed to a gift, those terms as much bind the object of the gift who accepts it as if he contracted to abide by the terms or conditions. This is an essential element in the law of election."

John Peoples died March 28th, 1892, and his estate was settled, and a considerable balance turned over to the trustee in 1894. Because the fund in hand is intestate property, the trustee claims that an administrator *d.b.n.c.t.a.* should

be appointed to distribute it to the various persons entitled; but the trust has terminated, and no good reason appears why the trustee should not make the distribution pursuant to the order of this court, without burdening the fund with any additional expense in another court. *Gray, Adm'r, v. Corbit,* 4 *Del.Ch.* 135; *Id.,* 4 *Del.Ch.* 357; *Ford v. Wilson,* 10 *Del.Ch.* 124, 85 *A.* 1073; *Rubencane v. McKee,* 6 *Del.Ch.* 40, 6 *A.* 639; see, also, *In re Riley's Estate,* 92 *N.J. Eq.* 567, 113 *A.* 485; *Fretwell v. McLemore,* 52 *Ala.* 124. The conditions causing the intestacy did not happen until the death of Rebecca P. Hall, and all of the testator's children are dead; but their interests in the fund were transmissible on their deaths to their heirs or next of kin, under the intestate laws, or otherwise. *Gray, Adm'r., v. Corbit* 4 *Del.Ch.* 135; *Id.* 4 *Del.Ch.* 357.

A "* * * future interest, be it ever so remote, will, if the person who is to take it in the event of its accruing die before that event happen, be transmissible to his representatives by descent, devise or assignment. * * * It is only where the contingency affects the person to take, so that he cannot be ascertained until the contingency happens, that there is no transmissible interest; * * *." *Gray, Adm'r., v. Corbit,* 4 *Del. Ch.* 357, at *page* 371.

The testator's real estate was conveyed to the trustee with authority to sell and convey it at public or private sale "in its discretion in the execution of" the will; the trustee exercised that right, and converted it into cash. But, in view of the fact that the estate of Sarah M. Peoples has no interest in the fund, it is immaterial whether it is to be regarded as wholly personal property, or largely real estate. In either event, the persons entitled are the same.

Rebecca P. Hall was a resident of Delaware, and on March 28th, 1940, letters testamentary on her estate were granted to Mary P. Huxley by the Register of Wills for New Castle County. William H. Peoples died intestate, a resident of Delaware, May 19th, 1892, and left to survive him a widow, Mary Jane Peoples, and one child, Mary P. Huxley, one of the complainants. Letters of administration on his

estate were granted to the said Mary Jane Peoples by the Register of Wills for New Castle County, and her final administration account was approved, and the estate closed on June 5th, 1893. Mary Jane Peoples died intestate, a resident of Delaware, May 18th, 1920, and letters of administration on her estate were granted by the Register of Wills for New Castle County to the said Mary P. Huxley, who was her sole heir and next of kin. Her final account was approved and the estate was closed June 29th, 1921. Sarah P. Stout, sometimes known as Sallie P. Stout, died intestate, a resident of Pennsylvania, July 10th, 1906, leaving as her next of kin and heirs at law her husband, Morris A. Stout, Sr., and two children, Morris A. Stout, Jr., and Reba S. Snyder. Letters of administration on her estate were granted by the Register of Wills of Philadelphia County, Pennsylvania, to her husband, Morris A. Stout, Sr., October 25th, 1906. Morris A. Stout, Jr., sometimes known as M. Albert Stout, Jr., died after the bill was filed, and his administratrix, Virginia W. Stout, has been substituted as a complainant. By agreement of the interested parties, any share of the estate of Sarah P. Stout, in the intestate fund to be distributed, is to be divided between Virginia W. Stout, Administratrix, and Reba S. Snyder; Morris A. Stout, Sr. having waived and assigned his interest.

John H. Peoples died a resident of Delaware, leaving a will, whereby he bequeathed the residue of his estate to his brother, Alfred D. Peoples. His will was probated before the Register of Wills for New Castle County on February 19th, 1914. Letters testamentary on his estate were granted to Alfred D. Peoples, and his final account was approved and the estate closed January 19th, 1915. Alfred D. Peoples died a resident of Delaware, leaving a will, wherein he named George Lodge, Vaughan Clavey and the Equitable Trust Company executors. Letters testamentary on his estate were granted to the executors named in his will on June 7th,

1939. George Lodge, one of the executors, died after the bill was filed.

From the foregoing facts, it is apparent that after the payment of the costs and reasonable attorneys' fees, the fund in the hands of the trustees must be distributed as follows:

To Mary P. Huxley, Executrix of Rebecca P. Hall, one-fifth; to Mary P. Huxley, one-fifth; to Reba S. Snyder, one-tenth; to Virginia W. Stout, Administratrix of Morris A. Stout, Jr., one-tenth; and to Vaughan Clavey and Equitable Trust Company, surviving executors of Alfred D. Peoples, deceased, two-fifths.

A decree will be entered in accordance with this opinion.