PHILIP G. RHOADS and WILMINGTON TRUST COMPANY, a Corporation of the State of Delaware, as Trustees under a certain Agreement bearing date the 26th day of November, A. D. 1935,

*vs.*

ELEANOR RHOADS MCFARLAND, LUCY R. RHOADS, MARION RHOADS SILVER and WILMINGTON TRUST COMPANY, Guardian for ELIZABETH RHOADS, daughter of REBECCA G. RHOADS.

*New Castle, January 4, 1945.*

*Thomas M. Keith,* for complainants. At the request of the court, Mr. Keith filed a memorandum in opposition to the contentions of the guardian, and in support of the recognition of superior interests in the respondents who did not appear.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for Wilmington Trust Company, Guardian for Elizabeth Rhoads.

PEARSON, Vice Chancellor: In 1935, George A. Rhoads entered into an agreement with complainants as trustees for the purpose of creating a "life insurance trust." It provides for the division and allocation of proceeds of policies on his life for the benefit of his issue living at his death, a separate share to be held for each child. The income from a child's share is payable to the child for life,

and provision is made for the disposition of the principal upon the death of the child. The settlor died in 1937 survived by four daughters, three of whom are still living and are the non-appearing respondents. The fourth daughter, Rebecca, died in 1939 unmarried, intestate, and without issue (consanguineous), but leaving her three sisters and a minor adopted daughter, Elizabeth, whose guardian is a respondent and has appeared and answered the bill. Rebecca took the custody of Elizabeth prior to the execution of the trust agreement. However, a formal adoption by order of the Orphans' Court was not effected until 1938, after the settlor's death. The question is whether at Rebecca's death her adopted daughter Elizabeth, or her three sisters, became entitled to a fund held under the trust agreement.

After directing a division of the insurance proceeds into shares for the benefit of the settlor's issue living at his death, the agreement continues (in subparagraph A of paragraph 2) :

"As to each such share set aside for any of Trustor's children, Trustee shall hold the same, in Trust, to pay the income arising from each share to the child for whom such share was set aside; for and during the natural life of such child, and at and upon the death of such child then, in Trust, to pay over and divide the principal of such share together with any increment and increase thereof to and amongst such person or persons and in such proportions as the life tenant of said share by last will and testament may direct and appoint, or, in default of such direction and appointment, then and in such case to pay over and divide the same to and amongst the then surviving issue of such life tenant, or if there should be no issue of such life tenant then surviving, then and in such case to pay over and divide the same to and amongst such person or persons as would then be the life tenant's next of kin and entitled to receive the same under the intestate laws of the State of Delaware had such life tenant then died intestate and possessed of said trust share, such distribution amongst next of kin to be made according to stocks and by right of representation."

Another relevant portion of the agreement is the fol-

lowing paragraph, which appears under the heading "Miscellaneous Administrative Clauses":

"10. The words 'child', 'children' and/or 'issue' as used in this Agreement refer to and mean natural offspring and do not include either stepchildren or adopted children; but this provision is not intended to qualify or to limit the unrestricted power given to each of Trustor's surviving children who is a life tenant of one of the trusts created under sub-paragraph 'A' of paragraph '2' of this Agreement to dispose by Will of the principal of the trust estate of which such child is a life tenant."

The life tenant Rebecca did not exercise the power of appointment. It is not contended that the adopted daughter is entitled to the fund under the gift to "surviving issue" of the life tenant. The guardian does contend that the adopted daughter is within the language of gift to "such person or persons as would then [at the life tenant's death] be the life tenant's next of kin and entitled to receive the same under the intestate laws of the State of Delaware had such life tenant then died intestate and possessed of said trust share."

If the life tenant had died intestate possessed of the trust share, it would have passed to her adopted daughter, rather than to her sisters. Under our distribution statute, *Rev. Code of Del.* 1935, § 3847, "children" take to the exclusion of "brothers and sisters." It provides first that:

"The residue of the personal estate of a deceased person, after the payment of all legal demands and charges, shall be distributed to and among every the children of the intestate and the lawful issue of such children who shall have died before the intestate; * * *."

Our adoption statute, *Rev. Code* § 3551, *as amended by* 41 *Laws of Del.* (1937) *Chap.* 187, *pp.* 620, 622, directs that an adopted child shall, "from and after the entry of the interlocutory order herein provided for, be, to all intents and purposes, the child and heir at law of the person so adopting him or her, unless and until such order is subsequently revoked, entitled to all the rights and privileges

and subject to all the obligations of a child of such person begotten in lawful wedlock."

The statute sets forth a form of final decree of adoption, which reads in part thus:

"Upon the petition * * * the Court doth allow the said petitioners to adopt as their own child . . . . . ., not theirs by birth, * * * and the Court * * * doth declare that from this date the said child, to all legal intents and purposes, is the child of the said petitioners, * * *."

Following the reasoning of *Industrial Trust Co. v. Glanding, ante p.* 125, 38 *A.* 2d 752, these provisions of the adoption statute must be "read into" the distribution statute in construing the meaning of the word "children" as used in the latter. Accordingly, an adopted child is a member of the class "children" for the purpose of determining the distributees of intestate property of an adoptive parent.

On behalf of the life tenant's sisters, much reliance is put upon the expression "next of kin" in the trust agreement as indicating an intent to exclude adopted children. In construing this language, it is important to observe that reference is made to the *"life tenant's,"* not the settlor's, "next of kin"; and that the agreement directs a distribution of the fund to such persons as *would be* the life tenant's next of kin and entitled under the intestate laws *if the life tenant had died intestate and possessed of the fund.* The problem, then, is to ascertain the "next of kin" of a deceased life tenant who was an adoptive parent (not an ancestor of an adoptive parent), and to make this ascertainment as though the distributable property had belonged to the adoptive parent at the time of her death, intestate. Thus, the instant case differs basically from *Hall v. Crandall,* 25 *Del. Ch.* 339, 20 *A.* 2d 545; *Huxley v. Security Trust Co.,* 27 *Del. Ch.* 206, 33 *A.* 2d 679; and *Industrial Trust Co. v. Glanding, ante p.* 125, 38 *A.* 2d 752.

In the case *In re Estate of Allen Smith,* 16 *Del. Ch.*

272, 145 *A*. 671, 673, Chancellor Wolcott said that the words "next of kin" standing alone "literally mean nearest blood relations." However, he recognized that by force of the context, others than blood relations might be included. It is self-evident that use of the expression "next of kin" postulates the existence of a hierarchy of classes of kin. Where, as here, it is used in a context involving a Delaware decedent and Delaware property, the expression can hardly be understood to refer to any other rule than the orders of priority of classes of a decedent's relatives established by our intestacy laws. Hence, "next of kin" indicates the class "children" (natural born), in preference to the class "sisters." Given the direction of the adoption statute that an adopted child shall be "to all intents and purposes, the child and heir at law of" the adoptive parent, the conclusion seems inescapable that for the purpose of determining the "next of kin" of an adoptive parent, the adopted child must be treated as a natural born child, and therefore within the meaning of the expression.

It is argued that by virtue of paragraph 10 quoted above, adopted children are excluded as beneficiaries. In that paragraph, three words, "child," "children," and "issue," are expressly defined "as used in" the agreement. The expression "next of kin" is not defined. It would seem unreasonable to hold that the settlor's particular definition of "children" should apply to that word as it appears in the intestacy statute, or as it is contained in the meaning of the expression "next of kin." It was plainly not intended that adopted children could under no circumstances become beneficiaries of the fund, for the definitions themselves are made inoperative to restrict the class of appointees under the powers given the life tenants. It follows that the trustee should be instructed that the adopted child Elizabeth is the next of kin of the life tenant Rebecca, and as such is entitled to a share of the trust fund.

A decree accordingly will be advised.