## COUNTIES OF WASHINGTON, NEWPORT, BRISTOL, AND KENT, DURING THE FALL CIRCUIT, 1858.

PRESENT:

Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, } Justices.
Hon. ALFRED BOSWORTH, }

## COUNTY OF WASHINGTON, AUGUST TERM, 1858.

### Rebecca B. Brown *v.* John D. Williams and others.

Where a testator devised lands to trustees for the use of his daughter Mary D., for life, with remainder in fee to her lawful issue, and in case she died leaving no such issue, " to the children of my daughter, A. B., not only those that are now born, but those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children, as shall be living at the time of my said daughter Mary D.'s decease, the children of a deceased child to take the same share their parent, if living, would have taken, the which I do hereby give to them, their heirs and assigns forever;" *Held*, that the children of A. B. who survived Mary D., were alone entitled to participate in the contingent remainder in these lands, and hence, that nothing passed in the lands under the will of one of them, who died during the life of Mary D. though *she* subsequently died without issue.

A bequest of bank shares in trust for the testator's daughter, Mary D., during her natural life, and to her issue in absolute property, and if she die leaving no issue, to the two grandsons of the testator, " J. D. B., and E. B. B., to them, their heirs, and assigns, to be equally divided between them," vests in interest in the grandsons immediately upon the death of the testator; and upon the death of J. D. B. in the lifetime of Mary D., his moiety passes under his will to his wife as his general legatee, so as to entitle her, upon the death of Mary D. without issue, to an account of the moiety of the stock, and of the dividends accrued thereon since the death of Mary D.

BILL IN EQUITY by the complainant, the widow and general devisee and legatee of the late John D. Brown, against the surviving brother and sisters of her late husband, and the trustees under the will of the late John B. Dockray of South Kingstown, his grandfather, for partition of about 200 acres of land, in South Kingstown, and an account of five shares in the capital stock of the Rhode Island Union Bank.

The bill claimed title in the complainant to one fifth part of the real estate aforesaid, and to the whole of said shares, as vested by the will of the late John B. Dockray, in her husband, one of the children of Ann Brown, and a grandson of the testator mentioned in his will, and by her husband devised and bequeathed, as aforesaid, to her. The two clauses of the will of Dockray appended to the bill, under which the title was claimed, were as follows—

" *Item ;* I give, devise, and bequeathe to my beloved son, John Bigland Dockray, to my friend James Sherman, and to my kinsman Isaac Peace Hazard, the farm and wood-lot which I bought of Samuel Perry, with the dwelling-house and all the other buildings thereon, now in the possession of Walter Perry, the boundaries and situation whereof may be known and are described by the deed on record, that is to say, in special trust and confidence, and to and for the uses and purposes following, viz: that he my said son, John B. Dockray, my said friend, James Sherman, and my said kinsman, Isaac Peace Hazard, shall jointly have and hold the aforesaid land and premises and appurtenances in special trust for my beloved daughter Mary Dockray, for and during the term of her natural life ; and my will and intention is, that my said daughter Mary Dockray shall and may have the yearly rents, issues, and profits of the aforesaid lands and premises for her maintenance and support in life.

And in case my said daughter should have lawful issue, it is my will and intention, and I do hereby give and devise the aforesaid described lands and tenements to her heirs and assigns forever. But if my said daughter, Mary Dockray, should die leaving no issue, then and 'in that case, I give and devise the aforesaid described lands and premises to the children of my daughter, Ann Brown, not only those that are now born, but also those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children, as shall be living at the time of my said daughter, Mary Dockray's decease; the children of a deceased child to take the same share their parent, if living, would have taken, the which I do hereby give to them, their heirs and assigns forever. It is my will that the said trust shall continue until the youngest child of my said daughter, Ann Brown, shall arrive at lawful age or be married, provided my daughter, Mary Dockray, shall die previous to that time.

*Item;* I give, devise, and bequeathe to my trustees aforesaid, to and for the use, maintenance, and support of my said daughter, Mary Dockray, five of my shares in the capital stock of the Rhode Island Union Bank, for and during the term of her natural life ; and provided she should leave issue, I give, devise, and bequeathe them to her heirs, and assigns forever; but in case she should leave no issue, I do hereby give, devise, and bequeathe the said five shares, after her death, to my two grandsons, John Dockray Brown and Edward Bigland Brown, to them, their heirs and assigns forever, to be equally divided between them, subject to the control, care, and management of my said trustees, until the said John and Edward shall arrive at the age of twenty-one years, if it should so happen that my said daughter, Mary Dockray, should die previously thereto ; and that, in that event, my said trustees should apply the dividends on said five shares to the maintenance and support of my said two grandsons, until they shall arrive to lawful age."

The will of John B. Dockray was dated December 21, 1819, and admitted to probate September 10, 1821. The bill further stated, that the said Ann Brown had seven children: Francis W., Hannah, Ann, Susan W., Mary, Edward B., and .

John D., the husband of the complainant; that John D., Edward
B., and Mary, all died without issue, prior to the death of Mary
Dockray, and the said Mary Brown, subsequent to said John
D. Brown, and that said Mary Dockray is now dead.

To this bill there was a general demurrer.

*Parsons* and *T. A. Jenckes* for the complainant:—

1st.   John D. Brown had a vested estate of inheritance in
remainder in the real estate devised in trust.   A remainder is
vested at any moment.   In case the preceding estate of free-
hold were to determine by any means, at that moment the re-
mainder would be capable of taking effect in possession.   2
Black. Com. (Wend. ed.) 170, n. 12, citing Fearne on Contingent
Remainders.   Though it may be uncertain whether a remain-
der will ever take effect in possession, it will, nevertheless, be a
vested remainder, if the interest be fixed.   The law favors vested
estates ; and no remainders will be construed to be contingent
which may, consistently with the intention of the testator, be
deemed vested.   4 Kent's Com. (8th ed.) 215, 216, n., and cases
cited; *Badger* v. *Lloyd,* 1 Salk. 232 ; S. C. 1 Ld. Raym. 523;
*Ives* v. *Legge,* 3 T. R. 488.   Here the interest was fixed, though
the share of each was to be determined by the number of chil-
dren born at the time of the death of Mary Dockray.   2 Jarm.
on Wills, 56, 312, 624 *et seq.,* and cases cited; Williams on
Real Prop. 208.

2d.   John D. Brown had such an interest in the land, in
trust for Mary Dockray, as could be devised.   The power of tes-
tamentary disposition extends to all interests in real and·person-
al estate, which, at the decease of the testator would, if not so
disposed of, go to his general real and personal representatives.
1 Jarm. on Wills, 83.   Not only vested remainders, but contin-
gent possible estates, and contingent reversionary interests, are
devisable.   2 Black. Com. (Wend. ed.) 109, n. 11; 1 Jarm. on
Wills, 86 and note ; 4 Kent (8th ed.) 573 ; *Hayden* v. *Stoughton,*
5 Pick. 528 ; *Brigham* v. *Shattuck,* 10 Pick. 306, 309.

3d.   The fee of the estate devised in trust vested in John D.
Brown immediately upon the death of John B. Dockray, and
could only be devested by the birth of issue to Mary Dockray.
He had therefore a vested remainder, which of course was

devisable and passed to the complainant by the will of her husband.

4th. The complainant is entitled to an account of the five shares in the capital stock of the Rhode Island Union Bank which were given to John D. and Edward B. Brown by name, upon the death of Mary Dockray without issue, Edward being dead. There can be no remainder properly of personal estate. 2 Jarm. on Wills, 57. The gift vested immediately, though contingent upon Mary Dockray's dying without issue, and was to take effect in possession upon the death of Mary Dockray without issue.

*E. R. Potter*, for respondents :—

The period of distribution fixed by the will is the death of his daughter Mary. The remainder in this case is not merely an ordinary contingent remainder, but is on a double contingency; *first*, on Mary Dockray's leaving issue ; *second*, on John D. Brown being alive at her death, the period of distribution. If the devise had been simply to Mary for life, and then to the children of Ann Brown, born and to be born, it would have been a vested remainder, subject to be devested in quantity by birth of subsequent children ; and it is to a case of this sort that most of the plaintiff's authorities apply. In cases of doubt, the English courts favor vested remainders for reasons peculiar to the laws of England; and many of the reasons for requiring the fee to be vested somewhere are peculiar to them. The fee in this case may be in the heirs of the testator until the contingency is determined. 2 Greenl. Cruise, 334. The present remainder is contingent. It is limited to a *class* of children, some of whom are *in esse* indeed, but *who* of the class are to take is not *ascertained* until Mary's decease. See the rule, Ib. 237. It is not the uncertainty of enjoyment, but the uncertainty of the right to enjoyment, which makes it contingent. 4 Kent, 206. The interest is not *fixed* until her death. A vested remainder is very clearly defined by Blackstone, and excludes this. 2 Black. 168.

But there is a peculiarity in this case not covered by the plaintiff's authorities. When there is (as here) a contingent remainder *in fee* between the life estate and the second contin-

gency, the latter is not vested. 2 Cruise, 240, § 44. They are in fact substitute or alternative estates. Ib. § 49. The other limitation is collateral to the contingent fee. 4 Kent, 200. Where (as here) there is a contingent limitation in fee absolute, the estate limited afterwards is not vested. 2 Cruise, 244, §§ 56, 57.

But the children who are to take are not *ascertained* until Mary's death. It is evident that the testator intended, that only the children *living at her death*, and the issue of those deceased, should take. Else, what need of a provision for the issue of those deceased? The devise is to the children of Ann Brown, born and to be born, &c., *or* to the issue of those deceased. It being evident that the testator did not mean to leave it uncertain to which class it is to go, the court will construe, *or*, to mean, *in case of the death of any of them*, (2 Jarm. 473,) or may simply construe it to mean, *and*. The clause is, " *to the children of my daughter Ann Brown, not only those that are now born, but also those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children, as shall be living at the time of my said daughter Mary Dockray's decease; the children of a deceased child to take the same share their parent, if living, would have taken,*" &c. Some of the clauses are parenthetical. The clause " *living at the time of my daughter Mary Dockray's decease,*" applies not only to the issue of children, but to children themselves. The children, as well as the grandchildren, must be alive at her death, to take. The evident intent of the testator was, to keep the property in his own family, and to prevent just such a claim as this. This is shown by the trust and the provision for the children of a deceased child. It was a lawful intention. The construction we contend for is the construction which would strike all intelligent men not lawyers, as being the testator's intent; and the court should carry out his intent, unless plainly contrary to law.

Let us now consider the right to *devise* a *contingency*. But for the second contingency referred to, the right of John D. Brown, although contingent, might be perhaps devised. But in this case, J. D. Brown's being alive at Mary Dockray's death, makes a part of the contingency. As he was not alive then, it could not descend; and what is not descendible,

is not devisable. It is almost exactly the case mentioned by Mr. Fearne, and quoted, 2 Cruise, 338, §§ 18, 23.

As to the bank stock, the bequest is of bank stock to trustees for the life of Mary Dockray, and then to her issue; " but in case she should leave no issue," then " *to my two grandsons J. D. Brown, (husband of plaintiff,) and E. B. Brown, to them, their heirs and assigns forever, to be equally divided between them*," &c. Both died before Mary Dockray. E. B. Brown died first, without issue, in 1834. The plaintiff claims, that it was a joint tenancy, and that on the death of E. B. Brown, John D. Brown took the whole, and she claims as residuary legatee under her said husband's will.

The English authorities have held that a bequest to two create a joint tenancy, (2 Kent, 350, 351; 2 Jarm. 115, note,) unless there are words in the will to prevent it. " Equally amongst them," creates a tenancy in common. 2 Jarm. 117. The words here are, *to be equally divided between them*, and are such, as in real and personal estate, would have made an estate in common. If it was a question between J. D. Brown and the residuary legatees in J. B. Dockray's will, whether the legacy should or not lapse, there might be a reason for favoring the claim of J. D. Brown as survivor.

AMES, C. J. The question raised by this demurrer, is, whether the late John D. Brown took such an interest in the real or personal estate intrusted to the principal defendants by the will of his grandfather, as to entitle his wife, the complainant, as his general devisee and legatee, to partition of the one or an account of the other, as against them and the other defendants, their *cestuis que trust*. It is well settled, that contingent and executory estates and possibilities, accompanied by an interest, as they will descend to the heir, or pass to the administrator of the person entitled, according to the nature of the subject of them, so they may be disposed of by his last will and testament. In *Roe* v. *Griffiths*, 1 Blackst. R. 605, Lord Mansfield said, that in *Selwyn* v. *Selwyn*, " he was prepared to have shown, with the concurrence of all his brethren, that in all contingent, springing, and executory uses, *where the person who is to take is certain*, so that the same are descendible, they are devisable ; these be-

ing convertible terms;" and such is the established doctrine. Fearne on Conting. Rem. 366–370, and cases cited. It will be noticed, that the qualification is, " where the person who is to take is certain;" for if the *contingency* is to decide who is to be the object of the contingent limitation, as the person, or of the persons, to or amongst whom the contingent or future interest is directed, as it cannot be determined in whom the interest is, until the contingency happens, no one can claim, before the contingency decides the matter, that any interest is vested in him to descend from,.and hence to be transferred or devised by him. The example given by Mr. Fearne is the case of a contingent or executory limitation to the right heirs of J. S. who is then living: in which case, as only the death of J. S. can decide who his right heirs are, according to the axiom *nemo est hæres viventis,* it is evident, that it cannot be ascertained in whom the interest is during the life of J. S., nor, consequently, that it is in anybody, during that period. If, therefore, the heir presumptive of J. S. should die before him, the contingent right would not descend from, nor could it be transferred or devised by him, for the simple reason, that no interest ever vested in him to descend, or to be transferred or devised. Fearne on Conting. Rem. 370, 371 ; and see *Doe* d. *Calkin* v. *Tomlinson,* 2 M. & S. 165; *Richardson & others* v. *Wheatland,* 7 Met. 171. Although, therefore, it is a general rule, that contingent interests, as well as vested interests, pass to the real and personal representatives of the person entitled, according to the nature of such interests, so as to entitle such representatives to them when the contingencies happen, it is an equally well ascertained exception to the rule, that the contingent devisee has no such title to pass to his representatives, and none therefore to devise or bequeathe, where the contingency is such, that his own existence at some particular future time is to determine whether any interest is to take effect in him, that is, whether he is to be a devisee of the contingent interest or not. Fearne on Conting. Rem. 364, n. *e,* 365, 370, 371 ; 1 Jarm. on Wills, (2d Am. ed.) 653.

Now, upon reading the will of John B. Dockray, we are satisfied that he did not intend that any interest in the real

estate, placed in trust for his daughter Mary for life, should vest in the descendants of his daughter, Ann Brown, until the death of Mary. The objects of his bounty in this devise were not, specially, the living children of his daughter Ann, but her descendants; for he expressly includes unborn children as well as born, and the issue of such as shall be dead at the death of Mary, as the persons to take in fee-simple this contingent remainder. It is true that the issue of a dead child are to take only the share that their parent, " if living, would have taken;" but this may be said to point rather to the mode of division in case of a child's dying intestate, than to speak as to the vesting of any interest in a child, pending the life estate of Mary; and then, the issue of a dead child, are, by the closing words of the clause,—" the which I do hereby give to them, their heirs and assigns forever,"—expressly made, as purchasers, and equally with the children, the devisees of this remainder, in fee. If therefore, we construe the words " as shall be living at the time of my said daughter, Mary Dockray's decease," as grammatically applicable only to the issue of deceased children, how, we may ask, are *their* interests under this will to be preserved, since, then, we must hold, that an interest in these shares so vested in the children, that they might, pending the life estate of Mary Dockray, alienate them from their issue ? The issue of children, living at the determination of the life estate, were certainly to take the share which their parents, if living, would have taken, as purchasers; and such an interest in them seems to us utterly incompatible with a right on the part of the parent to alienate his share, which would follow the vesting of any interest in the children pending the life estate of Mary. The issue were to take the shares which their parents " if living, *would have taken;*" which strongly implies, that their parents were to take nothing, unless living at the death of Mary Dockray. Considering that the intent of the testator evidently was, that the remainder in fee in these lands should go, first to the issue of his daughter Mary, and in case his daughter Mary died, leaving no issue, then to the issue of his daughter Ann, whether children born or unborn at the time of making his will, or to the issue of dead children living at the death of

27 *

Mary, we are satisfied, that the testator, by the words, " as shall be living at the time of my said daughter Mary Dockray's death," meant to designate as well what children, as what issue of the deceased children of his daughter Ann, should take. The only objection to this construction is, that as the future born children of Ann were to take, as well as her children born at the time of making the will, her children born after the death of Mary would be excluded by it; but then it is certain, that by the will, the division of these lands was to take place at the death of Mary; and the shares, both of the children and of the issue of the dead children of Ann, were to be then fixed and ascertained; and this, equally excluding children born after that time, indicates that such exclusion is no objection according to the will of the testator. It is true that the law favors the vesting of estates immediately upon the death of the testator; but as said by Mr. Chief Justice Shaw, in *Richardson & others v. Wheatland,* 7 Met. 171 : " This preference, however, is not to be so pressed as to defeat the intent of the testator." Our conclusion is, that only the children of Ann Brown, living at the death of Mary Dockray, were, in the contingency of her dying without issue, to participate in this remainder; and that the complainant's husband, who died before his aunt Mary, took nothing in it, and hence had nothing in it to devise to his wife, the complainant.

With regard to the five shares in the capital stock of the Rhode Island Union Bank, given by the will, upon the death of Mary without issue, to the complainant's husband and to his brother Edward, by name, there was no such uncertainty as to who was to take the contingent interest in them upon the death of Mary; and it vested in them immediately upon the death of the testator. Being so vested, the portion of the complainant's husband passed under his will to her, as his general legatee; and, as the contingency has turned in her favor by the death of Mary Dockray without issue, she is entitled to an account of this portion at the hands of the trustees, the defendants. By reason of the words, " to be equally divided between them," her husband and his brother Edward were to take this stock, when it vested in possession, as tenants in common, and

not as joint tenants; and hence the portion of this stock to be accounted for to the complainant is a moiety, with the dividends accrued thereon since the death of Mary Dockray.

As the complainant, according to the pleadings is entitled to this account, the demurrer must be overruled, and the defendants ordered to answer to the bill of the complainant.