## BRISTOL COUNTY.

WILLIAM F. DE WOLF *et al. vs.* ANNIE E. MIDDLETON *et als.*

A testator devised the P. farm to his daughters C. and M. their heirs and assigns, "provided, however, that in case my daughters C. and M. should die leaving no surviving issue, then it is my will that the estate on their decease be divided among my heirs at law according to the statutes of descents, their heirs and assigns forever, and I do devise the same accordingly."

This was followed by a devise of the H. estate in the same language except that the words "on both of their decease" were substituted for the words "on their decease."

C. and M. each died testate without leaving issue living at her death. The will of each made no mention of the P. farm and the H. estate, but the will of each devised "all the rest and residue of the property and estate real, personal and mixed, wherever situated," of which she might die possessed to the First Congregational Church of Bristol.

*Held*, that C. and M. took estates in fee in the P. farm and the H. estate defeasible on the death of the survivor if they left no issue living at the death of the survivor; that C. dying before M. her half of the realty passed under her will to the First Congregational Church; that on the death of M. the fee simple of M. and that which the church took under the will of C. were defeated, and that the realty thereupon passed to the testator's heirs at law by way of executory devise.

*Held*, further, that the testator's heirs were to be ascertained as of the date of the death of M. in 1890, according to the statute of descents then in force.

The status of a person being fixed by the law of the domicil, a natural child who is made legitimate under the laws of a foreign country, by the marriage of the parents domiciled there, is capable of taking by inheritance in this State, as the heir of the father.

BILL IN EQUITY for partition.

*Providence, January* 28, 1893. MATTESON, C. J. This is a bill for partition. By agreement of the parties a hearing was had for the purpose of obtaining a construction of the second and fifth clauses of the will of William De Wolf, formerly of Bristol, deceased; the question involved being, what estates did the daughters of the testator take under these clauses in the lands therein described.

The second clause, after devising the testator's farm known as the Poppasquash Farm to his widow for life, proceeds as follows: "after her decease I do give and devise the same real estate to my two dear daughters, Charlotte and Maria,

their heirs and assigns forever ; provided, however, that in case my said daughters, · Charlotte and Maria, should die, leaving no surviving issue, then it is my will that the estate, on their decease, be divided among my heirs at law, according to the statutes of descents, their heirs and assigns forever ; and I do devise the same accordingly."

The fifth clause is a devise directly to the daughters named of his Hope street estate in the same language as quoted from the second clause, except that for the words "on their decease" the words used are "on both of their decease."

Neither of these daughters left issue surviving at her death. Each left a will. Neither will contains any mention of either the Poppasquash Farm or the Hope Street estate, but each, after making specific bequests, devises in general terms "all the rest and residue of the property and estate, real, personal and mixed, wherever situated, of which" the testatrix might die possessed, to the First Congregational Church of Bristol.

It is contended in behalf of the First Congregational Church of Bristol that the effect of the provisions of the will under· consideration was to give to the daughters named an estate in fee simple in the lands devised in accordance with the rule in Shelley's case ; or that, in case the devise over is held not to fall within that rule, the daughters took an estate tail in the property.

We do not think that the rule in Shelley's case applies. That rule as stated by Mr. Preston in his treatise on Estates, (See 2 Bouvier's Law Dictionary, Title Shelley's case, rule in,) is as follows : "When a person takes an estate of freehold, legal or equitable, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of the same legal or equitable quality, to his heirs, or the heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." The provisions of the will before us do not conform to the rule thus stated. In the first place, the devises to the daughters are

in form absolute fees, after which no limitation by way of remainder can be made ; in the second place, the limitation over is not to the heirs of the daughters, but to the heirs of the testator. The mere accident that the heirs of the testator happen to be in this case the same persons as the heirs of the daughters does not affect the application of the rule.

Nor do we think that the devises can be construed to have created estates tail in the daughters. If they had been simply devises in fee to the daughters, and in case they should die without issue, with remainder to the heirs of the testator, and the terms of the devises were to be strictly followed, the daughters would have taken estates in fee simple, which would have rendered the limitations over to the heirs of the testator void as remainders, under the rule that a remainder cannot be created after an estate in fee simple. The limitations over would also have been void as executory devises because they would have violated the rule against perpetuities, since they would have restricted alienation of the lands until after an indefinite failure of issue. Inasmuch, however, as in such devises, an intention would be shown by the testator to benefit the issue of the daughters, as also his own heirs, the courts, by settled rules of construction, would have restricted the estates in fee limited to the daughters to estates tail, on which the limitations over in remainder would be good ; the failure of issue being the regular limit of an estate tail ; and they would take effect under the rule that whenever a limitation can take effect as a remainder it shall never operate as an executory devise. The rule against perpetuities would at the same time be observed, because the right to bar the entail at common law by suffering a common recovery, or by a deed executed and acknowledged in the manner prescribed by Pub. Stat. R. I. cap. 172, § 3, or by will as provided by the same section of the statute, is an inseparable incident of an estate tail and the restriction on alienation would, therefore, be determinable at the option of the tenant in tail.

The devises, however, are not merely in fee to the daughters, and in case they should die without issue with remainders to the heirs of the testator, as in the case we have

supposed, but the provisos, on which the limitations over are to take effect, are, in case they should die leaving no *surviving* issue, *then* . . . . . *on their decease,* in the one case, and *on both of their decease,* in the other, the estates are to be divided among the testator's heirs, &c.  It is evident from this language that the testator contemplated, not a failure of the issue of his daughters an indefinite time after their decease, but a failure occurring at a definite time, to wit, on their decease, these words being used to fix definitely the time when the limitations over are to take effect. Though, for the reasons stated above, a devise in fee will be restricted to an estate tail by a gift over in case the devisee die without issue, unless there is something to justify a different construction, yet when there is anything in the gift, or limitation, or in the context, to rebut this construction and show that the testator meant a failure of issue at a definite period instead of an indefinite failure, it will be rejected and the limitation over will be construed as an executory devise in defeasance of a fee simple, and not as a remainder sustained by an estate tail.  *Swinburne, Petitioner,* 16 R. I. 208; *Burrough & Wife* v. *Foster,* 6 R. I. 534; *Arnold* v. *Brown,* 7 R. I. 188; *Arnold* v. *Buffum,* 2 Mason, 208; *Hill* v. *Chaffee,* 14 N. H. 215; *Wilson* v. *Wilson,* 46 N. J. Eq. 321; *Den* v. *Snitcher,* 14 N. J. Law, 53; *Langley* v. *Heald,* 7 W. & S. 96; *Pells* v. *Brown,* Cro. Jac. 590; *Doe, dem. King,* v. *Frost,* 3 B. & Ald. 546; *Coltsmann* v. *Coltsmann,* L. R. 3 H. L. 121.

We are of the opinion, therefore, that the daughters Charlotte and Maria took under the second and fifth clauses of the will of their father, William De Wolf, estates in fee defeasible on the death of the survivor of them in case they should leave no issue surviving at the death of the survivor; that Charlotte, having died without issue in 1885, her undivided half of the estates in suit passed under her will to the First Congregational Church of Bristol; that Maria, having died in December, 1890, also without issue surviving at her decease, both her estate and the estate taken by the First Congregational Church of Bristol under the will of Charlotte,

were defeated, and that the lands thereupon passed to the heirs of William De Wolf under the executory devises contained in the proviso in the second and fifth clauses of his will.

*February* 25, 1895.  STINESS, J.  Upon a previous hearing in this case, it was held that the second and fifth clauses of the will of William De Wolf gave to his two daughters, Charlotte and Maria, defeasible estates in fee, which, upon their deaths without issue, passed to the heirs of said William by way of executory devise.  The question now arises whether the heirs are to be ascertained as of the date of the death of the testator in 1829, or of the death of the surviving daughter in 1890.

Three claims are made.  *First,* by the complainants, that the estate is to be treated as vested in the heirs of the testator at his death, as in the case of a contingent remainder; *second,* by the respondent Annie E. Middleton, that the estate vested upon the happening of the contingency in 1890, but that the heirs are to be ascertained under the statute of descent in force at his death; and *third,* by the other respondents, that the heirs are to be ascertained by the statute in force in 1890, when the devise took effect.

In most, if not all, of the cases cited by the complainants there was a precedent estate supporting a remainder, created from the death of the testator, but contingent upon an event. It would follow from this that the heirs must be ascertained as of the testator's death, because the interest in the remainder began then; e. g. *Bullock* v. *Downes,* 9 H. L. Cas. 1; *Mortimore* v. *Mortimore,* L. R. 4 App. Cas. 448; *Stewart's Estate,* 147 Pa. St. 383; *Kenyon, Petitioner,* 17 R. I. 149. But a marked distinction between a contingent remainder and an executory devise is that estates of the latter kind arise when their time comes and do not depend for support upon a prior estate.  Williams on Real Property, *289.  They may be limited upon a fee, as in this case.  An executory devise is the devise of a future estate, and if the executory devisee dies before the event happens, the estate goes to the heir at the time of the event and not to the heir at the time of the

death of such devisee. *Goodright* v. *Searle*, 2 Wils. 29 ; *Cain* v. *Teare*, 7 Jur. 567 ; Fearne on Remainders, [560], and cases cited. The happening of the contingency determines who is to take the estate, and until that time no one has an interest to transmit. *Brown* v. *Williams*, 5 R. I. 309. In *Doe* v. *Frost*, 3 B. & Ald. 546, where a testator gave an estate to his son in fee, and if he should die without issue to the heir at law of the testator, subject to legacies for the younger branches of the family, it was held that the son took an estate in fee with an executory devise over to the person who, on the happening of the event contemplated by the will, should become the heir of the testator. This case was referred to as a correct decision by Denman, C. J., in *Doe* v. *Spratt*, 5 B. & Adol. 731, upon the intention of the will. *Doe* v. *Frost* is also cited as an authority in *Coltsmann* v. *Coltsmann*, L. R. 3 H. L. 121 (1868). While the general rule is that the heirs of a testator are to be taken from the time of his death, yet the rule gives way to a contrary intent to be found in the will. Assuming, then, that the cases referred to go no further than this, we think that the will in this case shows such an intent. The property given to Charlotte or Maria is to go " on their decease," in the second clause, and "on both of their decease," in the fifth clause, to the heirs at law of the testator. In making such a gift his mind would naturally look forward to the time when the estate might vest in possession, and so the words used comport with an intent to point out the time and mode of ascertaining who the heirs will be, by designating a class to take as executory devisees. The agreed facts also point to such an intent. When the will was made the son William was a domiciled resident of Cuba, who, being an alien, was incapable, as our law then stood, of taking by descent. But that there can be no inference of an intent to exclude him on this account appears by the fact of a devise of real estate to him, and the fact that he, with the other children, was one of the residuary legatees in the will. Of course the testator could not foresee changes in our law in regard to alienage, but it is not improbable that he looked forward to a return of

his son, or his family, to citizenship in this country, when he or they could stand as legatees in the class which he designated. Moreover, the words are that the estate, " on their decease *be divided* among my heirs at law." The division was to be prospective, and we see no reason why the class should not also be taken to be so. For these reasons, as well as those given in the previous opinion, we think that these words were intended to fix the time for the vesting of the estate and for the ascertainment of the persons to take in possession. They are not substantially different from cases where the devise is to those who shall *then* answer the description. 2 Jarman on Wills, 6th Am. ed. *992, and cases cited ; *Swinburne, Petitioner*, 16 R. I. 208 ; *Pinkham* v. *Blair*, 57 N. H. 226.

In *Sears* v. *Russell*, 8 Gray, 86, the words, "in case of the death of any child of a daughter, without issue, after its mother and before its father, the share of such child shall not go to its father, but to the testator's heirs at law," were construed to mean the testator's heirs then living, and under such construction the devise was held to be void for remoteness.

But it is argued that the words, " according to the statutes of descents," import a class to be ascertained and traced from testator's death. We do not think this is so. In *Sturge and the Great Western Railway Co.*, L. R. 19 Ch. Div. 444, it was held that a devise to persons " who shall by virtue of the statutes for the distribution of the estates of persons dying intestate be my next of kin," describes a class to be ascertained on the hypothesis that the testator lives up to and dies at the period of distribution. See also *Wharton* v. *Barker*, 4 K. & J. 483. It must be admitted that in some of the cases cited the language has been clearer than in the will before us, but, understanding as we do that the testator pointed out a time when his devise was to take effect and the class to whom it was then to be given, this case does not fall within the numerous cases ·of a remainder, which is to be traced from the testator's death. It is a gift to persons who shall be his heirs when the contingency arises, and not to

those who were his heirs at the time of his decease. We therefore decide that the heirs of William DeWolf, Senior, are to be ascertained as of the date of the death of Mrs. Rogers, December 14, 1890, "according to the statutes of descents," as it then was.

By Pub. Stat. R. I. cap. 172, § 6, aliens are admitted to take and transmit title to real estate. It is admitted that by the law of Cuba the marriage of William DeWolf, Junior, to Susanna DuCoudray, in 1822, had the effect to render legitimate the son called Jerome DeWolf, born in Cuba in 1819. He was therefore an heir of his father according to the law of the father's domicil, and this determines his status here. *Melvin* v. *Martin, ante,* p. 650.

*James Tillinghast & Theodore F. Tillinghast,* for complainants.

*Benjamin M. Bosworth,* for respondent Annie E. Middleton.

*Francis Colwell & Walter H. Barney,* for respondent the First Congregational Church.

*John C. Pegram, George L. Cooke & Darius Baker,* for other and different respondents.