PETER J. FORD, Trustee under the last will and testament of
Martha J. Wilson, deceased,

*vs.*

ANNIE M. WILSON, otherwise known as Sister M. Antionette,
WILLIAM B. CORNOG, WILLIAM B. CORNOG, Adminsistra-
tor of Ellen Clara Cornog, deceased, FLORENCE A. HORN
and WILLIAM H. HORN, her husband, WILLIAM H. HORN,
Executor of Martha J. Wilson, deceased, SECURITY TRUST
AND SAFE DEPOSIT COMPANY, a corporation of the State
of Delaware, and FLORENCE A. HORN, Trustees of William
F. Wilson, an insane person, MARY WILSON, widow of
David B. Wilson, deceased, BAYARD DAVID WILSON and
MARTHA MARIE PATTERSON, two of the children of David
B. Wilson, deceased, WINFIELD WALTER PATTERSON, hus-
band of Martha Marie Patterson, WALTER H. HORN,
Guardian of Kathryn Klumpp Wilson and Eva Antionette
Wilson, minor children of David B. Wilson, deceased.

*New Castle, Feb.* 14, 1913.

Where there is a gift of a life estate in the residue, with a gift
in remainder to a class unascertainable until the death of the life tenant,
and at the death of the life tenant there were none of the class, there
is intestacy, if there be no gift over, or other disposition of the residue
in case of such default.

Where a testatrix, having five children, gave a share of her prop-
erty in trust for one of them during her life, with remainder to her chil-
dren or grandchildren, she then having neither children nor grandchildren,
the children of the testatrix, as her distributees, took equitable, vested
interests in remainder in such property, subject to be divested upon the
*cestui que trust* leaving a child or grandchildren; and hence, where she died
without children or grandchildren, her administrator and the executor or
administrator of another child, who had previously deceased, each took a
one-fifth interest in the property.

Where a testatrix gave property to trustees to invest the same,
collect the rents, interest, dividends and income as they should accrue and
become payable, and pay them over to a daughter as often as they should

be received during her life, the daughter's administrator was entitled to the interest and income calculated to the date of her death.

An executor was entitled to require a release from a testamentary trustee in making final settlement before paying over the amount to which the trustee was entitled, especially as in this State there is no adjudication of estates carrying with it a decree or order for distribution, and the executor or administrator distributes at his peril.

Where a testamentary trustee, by direction of the *cestui que trust*, who was *sui juris*, refused to give the executor a release upon the final distribution, and the executor thereupon deposited the amount to which the trustee was entitled with a trust company at a low rate of interest, the trustee, in settling with the *cestui que trust*, was not chargeable with interest in excess of that paid by the trust company.

A testatrix gave property in trust for a daughter, with remainder to her children. She left no children, and the property was distributable as in case of intestacy. Part of the trust fund had been paid to the trustee, and part was still in the possession of the executor. Income derived from the fund was still unpaid and had to be separated from the principal. *Held*, that the whole fund should be placed in the hands of the trustee and distributed by him instead of being distributed by the executor.

BILL BY A TRUSTEE FOR INSTRUCTIONS. Martha J. Wilson died January 10, 1898, and by her will made certain bequests and then divided all the rest, residue and remainder of her estate into five equal parts; gave one share absolutely to each of two brothers and one sister; gave one other share in trust for a sister, Annie, for life, and at her death to pay over the share to the testatrix's children then living and the issue of deceased children the testatrix's daughter being a member of a religious order and presumably bound to die childless; and gave the remaining one-fifth in trust, to be invested and the income paid to Ellen C. Cornog, a daughter of the testatrix, for life, and at her death to pay the principal fund and the property then held under the trust to the child or children, or grandchildren, issues of deceased children of Ellen.

William H. Horn became the executor of the will, and he and William F. Wilson, the testamentary trustees, having renounced, Henry A. duPont was appointed trustee by the

Chancellor.    Upon his resignation later, Peter J. Ford was appointed trustee April 18, 1904.    Ford, trustee, received from his predecessor $3,464.62 and later received from Horn, executor, $6,400, which moneys were kept invested by the trustee and accounted for by him.    The income was paid to the life beneficiary, Ellen C. Cornog, until her death, July 22, 1911.    She died intestate and without leaving any child or children living at her death, or any issue of any child then deceased.    Her husband, William B. Cornog, survived her and is the administrator of her estate.

Martha J. Wilson, the testatrix, left to survive her as her heirs at law five children, Annie M. Wilson, Ellen C. Cornog, Florence A. Horn, William F. Wilson and David B. Wilson, two of whom Ellen and David are dead, and William F. Wilson is a lunatic and is represented by a trustee.    David B. Wilson left a widow and four children.

Prior to the death of Ellen C. Cornog, William H. Horn, executor of Martha J. Wilson, filed a further and final account showing a further sum of $6,997.97 due and payable to the trustee for Ellen C. Cornog as of November 1, 1907.    This sum was about that time tendered to Ford, trustee, by Horn, executor, the latter requiring as a condition of said payment that the former give to the latter a full release as executor; but Ellen C. Cornog, the life beneficiary, having forbade Ford to accept it, he declined to receive it under such terms.    On October 28, 1908, the money was deposited in the Security Trust and Safe Deposit Company, presumably under the control of Horn, executor, and still remains there bearing only two per cent. or three per cent. interest.    Later, in November, 1908, Horn, executor, filed a petition to the Chancellor to compel Ford to receive the money and make the release, and after argument the Chancellor decided that he was without power to order the trustee to execute the release.    No portion of the interest on the money so deposited has been withdrawn by any one.

After the death of Ellen C. Cornog, the complainant, Ford, as trustee, demanded of Horn, executor, payment of the principal sum so deposited and all accrued interest, and tendered

a release; but Horn claimed the right to retain and administer the money as part of the estate of Martha J. Wilson. William B. Cornog, husband and administrator of Ellen C. Cornog, claimed that as Ellen C. Cornog died without children or issue of deceased children, and there was no further gift of that share of the residue, Martha J. Wilson died intestate as to that one-fifth share and that it vested in those who at the death of Martha J. Wilson were her heirs at law, including Ellen C. Cornog, so that it should be divided into five parts, of which the husband and administrator of Ellen C. Cornog was entitled to one part; and further, that both under the laws of Pennsylvania (where Ellen C. Cornog resided at her death) and of Delaware, the husband was entitled to all the estate of his wife, when, as here, she died without child or issue of children. This claim of William B. Cornog is disputed by the other heirs.

The estate is now all personalty, being personalty or proceeds of real estate sold by the executor. Being unable to properly distribute with these conflicting claims, Ford, trustee, brought this bill against all the parties, and prayed instructions.

By the answers, the allegations of fact in the bill are admitted to be true.

The interest accrued on the money deposited to the date of filing the bill, March 11, 1912, was $631.27, and the amount of such interest accrued to July 22, 1911, the date of the death of Ellen C. Cornog, was $540.19.

The cause was heard on bill and answers on motion of the complainant's solicitor for a decree under Rule 29*a*.

*Herbert H. Ward*, for the complainant.

*V. Gilpin Robinson*, of Philadelphia, for the defendants William B. Cornog and others.

*John Biggs and Armon D. Chaytor, Jr.*, for the other defendants.

The Chancellor. Several questions were raised by the bill and they will be considered separately. First. Did the testatrix, Martha J. Wilson die intestate as to the share given in trust for Ellen C. Cornog for life, being one-fifth of the resid-

uary estate, Ellen C. Cornog having died without leaving
children or issue of a deceased child? The gift was for the
benefit of Ellen for life only and there was no further or other gift
of that share, or of any interest in it, except to the child or
grandchildren of Ellen. Looking only at this part of the will,
it is clearly an intestacy, though intestacy is abhorred by courts
in construing a will which presumably disposes of all the estate
of the testator. But it was urged that if the whole will is looked
at, it will appear that there was a clear intention of the testa-
trix to make a gift by implication to the children of the testa-
trix living at the death of the life tenant, and the issue of any
such children as should then be dead, thereby excluding
William B. Cornog, either as husband or administrator of Ellen
C. Cornog. It was urged that because in making the trust pro-
vision for the benefit of her daughter, Annie, and her son,
William F., the testatrix gave a remainder after the life estate
to the children then living of the testatrix, and the issue of any
such as should then be dead, and in default of such children or
issue, to the children then living of the testatrix, therefore the
same intention would be implied in the gift in trust for Ellen
C. Cornog, and only the children of the testatrix living at the
death of Ellen would together take her share. But the danger
of implying gifts is clearly pointed out in *Gray v. Corbit*, 4 *Del.
Ch.* 135, 173, and there is here no reasonable ground for such
implication. To deny intestacy here would be to conjecture
what the testatrix would have done if she had thought of such
an event as did in fact happen. Disposition of the trust estate
in case Ellen C. Cornog died without child, or grandchild, was
a *casus omissus* and a contingency wholly unthought of by the
testatrix, for ought that appears in the will. There is no doubt,
then, as to intestacy. Where there is a gift of a life estate in
the residue, with a gift in remainder to a class unascertainable
until the death of the life tenant, and at the death of the life
tenant there were none of the class, there is intestacy, if there
be no gift over, or other disposition of the residue, in case of
such default.

Second. Does the trust result to the heirs at law of
artha J. Wilson, the testatrix, passing to them as at her

decease an interest transmissible upon the death of any of them during the life of Ellen C. Cornog, or does the fund belong only to those heirs of the testatrix who at the death of Ellen C. Cornog could entitle themselves as such heirs?

In this case the question is material because one, at least, of the heirs at law of the testatrix died in the life of the life tenant and left a widow and children surviving him.   This question is settled, not only by the well defined rules of law, but also by a case in point in this State, *Gray v. Corbit*, 4 *Del. Ch.* 135; *s. c.*, 4 *Del. Ch.* 357.   There land was devised to trustees in trust to apply the rents to the support of Richard, a son of the testator, for life, and at the death of Richard to convey to his children; if none be then living (as there were not) then to Richard's sister, Mary Ann, if then living (which she was not); and if the sister was not then living, then to convey to "the lawful heirs" of Mary Ann.   The rents from the land were more than sufficient for the support of Richard, who was an imbecile, and at his death there was a large accumulation of such surplus rent.   The questions there considered were: (1) Did this surplus pass to the lawful heirs of Mary Ann with the land? or (2) Did it result to the heirs at law of the testator?   It was held that the surplus rents belonged to the heirs at law of the testator as in the case of intestacy, there being no disposition thereof by the will.   The Chancellor there noted that a different rule prevailed as to personalty, and that income accruing from personal estate prior to a limitation over followed the fund as an accretion to it.   It was meant that if the subject matter of the trust had been personal property, and it had been given in trust for the support of Richard for life, and then to be transferred to Mary Ann, the unused accumulation of income would have gone with the fund to Mary Ann, as an accretion to it.   But this does not apply to the will of Martha J. Wilson, for there was no gift over.   At a later hearing it was held by Chancellor Bates, in *Gray v. Corbit, supra*, that the surplus rents were distributable among all the heirs at law of the testator as ascertained upon his death, and not upon the death of his son Richard, the life beneficiary; and further, that if any of such heirs died in Richard's life the executor or administrator of the heir

so dying was entitled to it as personalty, including the administrator of Richard.

Therefore, in ascertaining who is entitled to the one-fifth share given in trust for Ellen C. Cornog, it is clear of course, that those children of the testatrix alive at the death of Ellen, viz., Annie, Florence and William J., were entitled. So also was the representative of Ellen C. Cornog, who left to survive her her husband, and the share of Ellen as an heir at law of her mother's estate in intestacy was transmissible to the representatives of Ellen, though Ellen herself could not have taken, because the contingency on which the intestacy arose could not have happened until at and upon Ellen's death. When, however, it did happen and intestacy arose, then the court must go back to the death of the testatrix, Martha J. Wilson. Although during the life of Ellen, it was uncertain whether there would be intestacy, still an interest in Ellen's share in case intestacy happened by the death of Ellen without children, or grandchildren, would even in Ellen's life be a present subsisting interest, provided there was then a person ascertained and capable of taking, and, of course, there is always some person entitled to take by the laws of descent and distribution in the absence of testamentary disposal. Again, because under our statutes of descent and distribution all estates and interests are inheritable, so each child of the testatrix living at her death took an interest transmissible forward from him or her. The case of *Gray v. Corbit, supra,* related to rents of real estate, but there does not seem to be any difference in principle in cases where the subject matter is personal property.

In this case, as in other cases of a resulting trust, the fund goes to the heir of the testator (meaning, in case of personal property, the person entitled to the distributive estate of the testator) as though there had been no disposition of the fund by the testator. However contingent or uncertain it was whether there would be intestacy, yet when it happened by the death of Ellen C. Cornog without leaving a child or grandchild, then the course of succession of the fund is ascertained by going back to the death of the testatrix and considering the case as if there had then occurred a descent of the fund, directly

from her. It follows that all the consequences of descent should be present, viz: transmissibility by descent, bequest or assignment. It is not material to consider whether the interest of the heirs of Martha J. Wilson in this fund was transmissible by will, because none of her children who have died left a will.

At the death of the testatrix it was apparent that there would be a resulting trust in favor of the heirs of the testatrix, because there was then no child or grandchild of Ellen C. Cornog capable of taking under the will the one-fifth share given to Ellen for life and with remainder to her children or grandchildren. So also the persons then entitled to take were then ascertained, viz: the distributees of the testatrix. Therefore the heirs or distributees of the estate of the testatrix took equitable vested interests in remainder after the death of Ellen C. Cornog, subject to be divested upon her leaving a child or grandchild. The share of an heir of the testatrix, who died in the life of the life beneficiary, Ellen C. Cornog, passed to the executor or administrator of the one so dying. *Conwell's Adm'r. v. Heavilo*, 5 *Har.* 296; *Rubencane v. McKee*, 6 *Del. Ch.* 40, 6 *Atl.*, 639; *In re Nelson's Estate*, 9 *Del. Ch.* 1, 74 *Atl.* 851. This was also held in *Gray v. Corbit*, *supra*, and in two cases there cited by Chancellor Bates, *Wright v. Wright*, 16 *Ves. Jr.* 188, and *Jessop v. Watson*, 1 *Myl. & K.* 665.

From the above it follows that William B. Cornog is entitled to the one-fifth share of the trust estate as administrator of his wife, Ellen C. Cornog. As her surviving husband, he is, under the laws of distribution of personal estates of descendants, entitled to the residue of her estate (see *Chap.* 89 *of Revised Code*, §32, *as amended by Chap.* 207, *Vol.* 20, *Laws of Delaware*, *passed May* 8, 1895). So that for the purposes of distributing the trust estate it is not important in which capacity he settles with the one by whom the fund is distributed.

So also the representative of David B. Wilson, who survived the testatrix and died in the life of Ellen C. Cornog, leaving a widow and children, is his executor or administrator, and not his widow and children, and payment should be made to such executor or administrator and not to his widow and children.

A few more questions were raised and must be considered and determined. To whom does the income, accrued to the death of Ellen C. Cornog, on the fund deposited with the trust company belong? To her administrator or husband, or as part of the principal of the trust property? By the language of the will, it would seem clear that the income not only on the fund in the hands of Ford, trustee, but also the interest on the fund on deposit in the trust company, both calculated to the death of Ellen C. Cornog, should not go as part of the trust principal but to the administrator of Ellen. The income was by the will payable to her as it should accrue, and became payable when and as received. Whatever belonged to her in her lifetime belongs to her personal representative, her administrator. This, of course, applies to the income on the funds in the hands of Ford, trustee, as well as that on deposit in the trust company.

Should Ford, trustee, or Horn, executor, be charged with interest on the amount on deposit with the trust company at a rate greater than the two per cent., or three per cent., allowed thereon by that company? This depends in part on who is responsible for the failure of Horn to pay over, and of Ford, trustee, to receive, the money so deposited. The reason why the money was not paid was because Ford refused to make a full release to Horn. This reason was a sufficient one, for Horn had a right as executor to require a release from Ford in making the final settlement. An executor is entitled to demand a release in making a final distribution of an estate. 2 *Perry on Trusts*, §922; *King v. Mullins*, 1 *Drew* 308. This is particularly true in this State, where there is not, as elsewhere, such an adjudication of estates of decedents as carries with it a decree or order for distribution. Here the executor or administrator distributes at his peril. But even if it was the duty of Ford to have acted either by accepting the settlement and giving the release, or by refusing the settlement and excepting to the account, his failure to do either may be excused by the action of the life tenant in notifying him not to accept the settlement and give the release. Ellen C. Cornog was *sui juris* and was entitled to the income on the fund to the time of her death, and she forbade her trustee to accept part of the principal of

the trust property.   It would be unfair to require the trustee, who had so complied with her objection, to pay to any one who should claim under her any penalty for so complying.   If she had not been *sui juris*, the case might have been different. When a life beneficiary, who is *sui juris*, forbids the trustee to accept a settlement under which money is payable to the trustee, neither the life beneficiary, or any one who claims under her will be awarded, as against the trustee, any sum as a penalty for not having accepted the settlement when tendered and invested the money; and if the trustee receives the money in settlement and interest thereon is allowed, he will not be chargeable with a greater rate of interest.   Here there is no danger of loss of the sum so deposited, or of interest thereon allowed by the depositary.

By whom should the principal of the trust estate be distributed, i. e. by Ford, trustee, or by Horn, executor?   It should be noted that the trust property is in two parts, one part $9,866.62, now in the hands of Ford, and $6,997.97, on deposit in the trust company under the control of Horn, with interest. Should Ford pay the former sum to Horn, or Horn pay the latter sum to Ford?   The trust has terminated and nothing remains to be done except to distribute the fund under the orders of this court.   If Ellen C. Cornog had left a child or grandchild, the trust fund would have gone through the trustee to her. The trustee must separate principal from income.   By the will the money deposited with the trust company was payable to the trustee.      Part of the trust fund is in the hands of the trustee.   For these reasons, and in the absence of authority, or any controlling principal of law to the contrary, it seems most reasonable to have the whole fund put into the hands of Ford, trustee, and distribution made by him.

Let a decree be entered accordingly.