Bank of Delaware, formerly Equitable Security Trust Company, formerly Security Trust Company, a corporation of the State of Delaware,

Plaintiff,

*vs.*

Sara Payne Wilson Hitchens, Susan W. Bedyk, Harry L. Wilson, III, Mary J. Pearce, Mabel L. Lynch, Josephine Corcoran, Elizabeth A. Boulden, Richard D. Aiken, Amos R. Merritt, Mamie M. Bernard, Hilda M. Merritt, Ruth M. Neilsen, Mary Ann Reynolds, Richard B. Merritt, IV, James W. Merritt, Lewis A. Collins, Merritt W. Collins, Francis L. Collins, Sallie R. Wilson, Leota Snyder, Daniel E. Wilson, Jr., E. Amos Wilson, Jr., Virginia L. Galati, Betty Glanding, Catherine Raymond,

Defendants.

*New Castle, February 28, 1961.*

*Supplemental Opinion, June 15, 1961.*

*Howard L. Williams* and *George C. Hering, III,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*H. James Conaway, Jr.,* of Morford, Young & Conaway, Wilmington, for defendant, Ruth M. Neilsen.

*Clement C. Wood,* of Allmond & Wood, Wilmington, for defendant, Susan Wilson Bedyk.

*Victor F. Battaglia,* Wilmington, of Theisen and Lank, Wilmington, *amicus curiae.*

SEITZ, Chancellor: The Bank of Delaware, successor trustee, seeks instructions with respect to the distribution of the corpus of a trust created under the will of Daniel E. Wilson ("testator").

The testator executed his will on March 22, 1933 and died December 27, 1934. After making certain specific bequests and devises, he devised and bequeathed the remainder in trust to pay the income to Janet Miller for life. He provided by Item Seventh that upon her death the trust principal should be divided equally "among the following relatives of mine who are at that time alive". He then listed by name a nephew, a brother and three sisters. He then provided:

> "Eighth: In the event that all of the distributive provisions of this will fail, then I direct that my estate be distributed as is provided for in the laws of Delaware for intestate estates."

The life beneficiary died October 6, 1959. However, all the named remaindermen predeceased her, the last one having died February 6, 1957.

The trustee assumed that the deaths of the remaindermen named in Item Seventh, before the income beneficiary, rendered Item Eighth operative. It alleges that it is uncertain as to whether the intestate beneficiaries under Article Eighth are to be determined as of the date of death of the testator or as of the death of the life beneficiary, or even as of the death of the last of the relatives named in Article Seventh.

The two appearing defendants, Ruth M. Neilsen and Susan W. Bedyk ("defendants"), claim a share of the remainder interest on the theory that the will shows that the testator clearly intended that the intestate beneficiaries should be determined as of the date of the death of the life tenant.

A large number of possible distributees have not filed an answer or entered an appearance. On application, the court appointed an *Amicus Curiae* to present the views favoring a construction that the controlling dates are either that of the testator's death or the death of the last beneficiary mentioned in Item Seventh. However, the *Amicus* went on to argue that Item Eighth never became operative. Thus he contends that under Item Seventh there were no takers and so the testator died intestate as to the remainder.

One of the defendants argues that the *Amicus* exceeded the scope of his appointment when he contends that Article Eighth of the will never became effective. I need not consider this point because under my construction of the will the same persons take whether or not Item Eighth is applicable.

Under Item Seventh all those designated as contingent remaindermen died before the income beneficiary. There was no alternative provision under that Item. In consequence, the testator died intestate so far as that Item is concerned. See *Ford v. Wilson*, 10 *Del.Ch.* 124, 85 *A.* 1073. Thus, the remainder had to pass under the intestate statute.

Now let us assume that Item Eighth applies, despite the contention of the *Amicus* that it never became operative because "all of the distributive provisions" of the will did not fail. The next issue is whether the intestate heirs who take under Item Eighth are to be determined as of the date of the testator's death or as of the date of the death of the income beneficiary. Parenthetically, it is not contended by anyone that the date of death of the last remainderman named in Item Eighth is controlling.

It appears to the court that the wording of Item Eighth is decisive. I say this because the testator directed "that my estate be distributed as is provided for in the laws of Delaware for intestate estates". The only Delaware law in this regard fixes the heirs as of the date of the testator's death. *Burton v. Burton, 4 Har.* 38; 3 *Page on Wills (Life ed.)* § 1054. The case of *DeWolf v. Middletown,* 18 *R.I.* 810, 26 *A.* 44, 31 *A.* 271, 31 *L.R.A.* 146, cited by defendants, may or may not be inconsistent with the *Burton* decision. In any case, I am bound by the *Burton* case and consider it to be "good" law.

In any event, defendants recognize that the general rule of construction is that the heirs at law are determined as of the date of death of the ancestor and not as of the death of the last life tenant in the absence of a clear and unambiguous indication of an intention to the contrary. Compare *Delaware Trust Co. v. Delaware Trust Co.,* 33 *Del.Ch.* 135, 91 *A.2d* 44, 38 *A.L.R.2d* 318 (and cases cited therein).

It is argued that the contingent nature of the remainders mentioned in Item Eighth suggest that the heirs are to be determined as of the date of the death of the life beneficiary. The facts here just do not provide a basis for emphasizing this factor. I say this because those who are to take as heirs under the statute could have had no particular importance to the testator. The persons in whom he was interested had to predecease· the income beneficiary before Item Eighth became operative. The case of *Delaware Trust Co. v. Delaware Trust Co.,* above, dealt with a very different situation, *e.g.,* the life tenant was the sole heir. I conclude that there is nothing

in this will or the supplemental facts which show a clear intent that the heirs are to be determined as of the death of the income beneficiary.

I therefore decide that the trust remainder should be distributed to those who would have been the intestate heirs of the testator at his death or to their successors in interest.

Present order on notice.

### Supplemental Opinion.

After the filing of the court's opinion the parties were given the opportunity to argue who were the "successors in interest", to the heirs of the testator. This is the decision thereon. The defendants, Bedyk and Neilsen, point out that neither will share if, in determining the present successors in interest of the intestate heirs, the trustee must follow testamentary dispositions of estates.

The remaindermen mentioned in Item 7 all predeceased the income beneficiary. It would seem clear, then, that upon the death of the last remainderman in 1957, the remainder interest became intestate property. In such a situation the court usually will go back to the testator's date of death and ascertain who would have been his heirs at law under the statute at that date. Since the testator had no children or parents surviving, the intestate share passed to his brothers and sisters and the issue of deceased brothers and sisters. Since there apparently was an intestacy throughout three of the lines of succession, there is no quarrel as to the disposition of those three-fifths. The dispute concerns the transmissibility of the intestate interests of Harry and Lena, in particular. Harry left a will which cut off his daughter, Sue Wilson Bedyk. Lena died intestate but left a son Richard who died testate and who cut off his daughter, Ruth Neilsen.

The defendants Bedyk and Neilsen argue that there is a clear expression of intention to exclude the remaindermen in Item 7 from taking transmissible interests under Item 8. I do not find any evidence in this will of an intent to eliminate all wills in determining the line of succession. To pick out the date of death of the last remainderman as the contingent event upon which transmissibility

by will depends would be to permit some heirs of the same degree of relationship to transfer by will while others could not.

The attorney for Sue Bedyk argues that when Item 8 is read in conjunction with Item 7 it is clear that the testator intended that those who were to take were his intestate heirs at the death of the last remainderman. This argument is necessarily based upon a contention that the testator so intended. However, in my prior opinion I believe I disposed of this contention by concluding that there was no evidence in the will to justify the conclusion that the testator intended his intestate heirs to be determined at some date other than the date of his death. I therefore conclude that the will does not justify the construction that the intestate heirs are to be determined as of the date of the death of the last remainderman.

Defendant Neilsen tacitly concedes that if Item 8 is not operative the dictum in the *Ford* case may compel the court to conclude that testate as well as intestate dispositions should be followed in determining the present successors in interest of the heirs of the testator as of the date of his death. Defendant Neilsen argues, however, that Item 8 is operative and provides for a gift over upon the failure of the named relatives to survive the income beneficiary. She says the heirs named in Item 7 were the testator's intestate heirs at the date of his death. Thus, since he provided that these persons must survive the income beneficiary in order to share in the residue of his estate, there is a clear expression of intention to exclude these persons from taking a transmissible interest under Item 8. Rather, she says, the intestate heirs were designated only to determine who would take the gift in possession when the contingency happened.

In its prior opinion this court decided that the language of Item 8 did not require a deviation from the general rule of construction that the heirs at law are to be determined as of the date of death of the ancestor and not some later date in the absence of a clear and unambiguous expression of an intent to the contrary. This would ordinarily require the court to consider testamentary dispositions of such heirs in determining the successors in interest. I find nothing which would call for a deviation from the application of this rule of

construction. Item Eighth is a "directed intestacy" which merely permits the estates of the remaindermen to be recognized in disposing of the property.

The defendant Neilsen's brief contains a statement that should the court find that the testator intended by Item 8 to give the named relatives a transmissible interest, even though they failed to survive the income beneficiary, she is still entitled to take as intestate heir of her ancestor. Her argument appears to be that the transmissibility of such interest did not become possible until the happening of the applicable contingency.

Aside from other possible infirmities in this argument, it appears to be nothing more than an argument as to the testator's intent couched in different language. The interest created under Item 8 was a "directed intestacy" and the statute controls. Since there is no evidence of an intent to the contrary, the statute is applied by starting from the date of death of the testator and ascertaining the recipients in the same manner as though there were an intestacy originally.

The defendant, Neilsen, further argues that the will created "a possibility of reverter" in the testator or his heirs and that under the law of Delaware such an interest could not have been passed by will prior to the happening of the contingency in 1959. She argues, therefore, that the will of the testator's descendant, Richard Merritt, who predeceased the income beneficiary, cannot be considered in determining those entitled to the intestate share because that will took effect while the "possibility of reverter" was still executory. Assuming that such an estate could exist with respect to trust property, I think it is evident that we are not here concerned with a possibility of reverter. I say this because this will did not contain a limitation or condition of the type which would terminate a vested fee. The limitation here was contingent in nature as to those persons who would take the remainder interest. In any event, we are concerned with the succession to an interest in personalty which I have concluded must be considered as intestate property and distributable to the heirs at law at the date of the testator's death. This

eliminates any possibility that it was thereafter governed by principles applicable to a possibility of reverter.

Another argument made by the Neilsen defendant is that the law of Maryland rather than the Delaware law should control the distribution of the intestate share of Lena Merritt (the testator's sister) because she died domiciled in Maryland. This is true once the property is distributed as though she had died intestate possessed of such share. However, in determining that the interest passed "to" her estate as intestate property the court necessarily applies Delaware law to the testator's will. I assume that Maryland law is the same as ours and requires that testamentary dispositions be considered in determining Lena's successors. This would require that the will of Richard Merritt be given effect.

I conclude that in determining those who are to take the intestate property, the trustee should follow testamentary dispositions of estates where they exist.

Present order on notice.